531 So.2d 901 (1988)
Ex parte State of Alabama.
Ex parte ANONYMOUS, a minor.
(In re In the Matter of ANONYMOUS, a minor.
87-1067, 87-1088.
Supreme Court of Alabama.
June 21, 1988.
*902 Don Siegelman, Atty. Gen., and William Prendergast and Sharon E. Ficquette, Asst. Attys. Gen., for the State.
E. Hampton Brown and Wendy Brooks Crew of Legal Aid Soc. of Birmingham, Birmingham, for minor.
As Corrected on Rehearing Ex Mero Motu.

Opinion Corrected On Rehearing Ex Mero Motu
PER CURIAM.
These petitions seek review of the judgment of the Court of Civil Appeals reversing the judgment of the trial court, which denied the petition of the minor for waiver of the requirement of parental consent for an abortion pursuant to Ala.Code 1975, § 26-21-1 et seq. (1987 Supp.) (the parental consent act). Although we affirm the judgment of reversal, we disagree with the Court of Civil Appeals' reasoning that the parental consent act is unconstitutional as applied to the facts of this case. Because of the urgency of the matter, we reverse the judgment of remand, grant the minor's request for a waiver of the requirement of parental consent, and render judgment accordingly.
The minor in this case is in the custody of the Alabama Department of Human Resources (DHR) and neither of her parents is available to give consent. DHR takes the position that it cannot give consent because of regulatory prohibitions against an agency receiving Federal funds if it participates in a decision for an abortion.[1] The minor has no legal guardian other than DHR.[2] The minor argued, and the Court of Civil Appeals agreed, that because of the unavailability to her of the possibility of consent by her parent or guardian or of any method for obtaining an abortion other than a court proceeding for waiver of the consent requirement, the parental consent act violates her right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.
The minor in this case is twelve years old. On May 16, 1988, she filed a petition in the Juvenile Court of Jefferson County for waiver of the requirement of parental consent, stating that she "wish[ed] to have an abortion performed without the consent of either parent or legal guardian." The court held a hearing on May 18, at the conclusion of which the following occurred:
"The Court: I've got a problem with this case in that the child is twelve as I understand it; and, of course, the whole purpose of this statute is to grant the child a waiver of having the required parental consent so that she may act on her own in giving the consent to the abortion. It's not a petition to have the Court declare that an abortion be performed upon the child.
"...
"I do not think that she has sufficient maturity and is well informed enough to make the abortion decision. It's my understanding that [she is] fourteen to *903 sixteen weeks pregnant, fair prognosis. I'm going to deny the request."
Section 26-21-3(a) of the parental consent act prohibits any person from performing an abortion "upon an unemancipated minor unless he or his agent first obtains the written consent of either parent or the legal guardian of the minor," except as otherwise provided in the act. Section 26-21-3(e) provides:
"A minor who elects not to seek or does not or cannot for any reason, including unavailability [of] or refusal by either or both parents or legal guardian, obtain consent from either of her parents or legal guardian under this section, may petition, on her own behalf, the juvenile court, or court of equal standing, in the county in which the minor resides or in the county in which the abortion is to be performed for a waiver of the consent requirement of this section pursuant to the procedure of section 26-21-4."
Section 26-21-4(f) provides:
"The required consent shall be waived if the court finds either:
"(1) That the minor is mature and wellinformed enough to make the abortion decision on her own; or
"(2) That performance of the abortion would be in the best interest of the minor."
Section 26-21-4(g) requires the court to "issue written and specific factual findings and legal conclusions supporting its decision." Immediately after the hearing, the court entered a "denial of waiver of consent order" on a printed form for such denials. The printed portion of the form provides blanks for the court to make findings, inter alia, as to the minor's age and the length of the pregnancy. The printed section for findings concludes: "and that ______ the minor is not mature and well informed enough to make the abortion decision OR ______ the performance of the abortion is not in the best interest of the minor." The court wrote the minor's initials in the first of these blanks. This form is clearly deficient in its use of "OR" rather than "AND."
In a large space on the form (preceded by "The Court further finds that:") the court wrote:
"Child is in custody of Department of Human Resources
Mother is in Bryce Hospital [for psychiatric care]
Whereabouts of father unknown
Family has a history of mental illness
From courtroom observation, child is immature & not able to make competent decision in this matter."
On June 1, the court amended its order by placing check marks in both blanks in the printed findings regarding maturity and best interest, crossing out "OR" and writing "and," and adding:
"The Court further finds that: As child is 14-16 weeks pregnant, she has passed her first trimester of pregnancy; the child is only 12 years old & the prognosis for delivery is fair, an abortion is not in the best interest of the minor."
The case was appealed to the Court of Civil Appeals, which reversed the judgment and remanded the cause on June 9. 531 So.2d 895. The crucial reasoning of that court's opinion concludes:
"To so require the minor to petition the court for a waiver from a consent which she cannot obtain unduly burdens her constitutional right to an abortion. She thus stands in a different position from a minor who can at least seek consent. That is, unlike the minor who can seek consent, the minor in this case is subject to the trial court's `absolute veto over the minor's decisions, based on [its] judgment of her best interests.' Bellotti [v. Baird], 443 U.S. [622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979),] at 654 [99 S.Ct. at 3054]. We can discern no rational relationship between this burden and the legitimate state interest as embodied in the statute."
531 So.2d at 899.
Without passing on the opinion in other respects, we find that the reasoning of the Court of Civil Appeals for its judgment is incorrect in treating the procedure for judicial bypass of the consent requirement as providing an impermissible "absolute veto *904 over the minor's decisions." The case cited by the Court of Civil Appeals, the plurality opinion in Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (Bellotti II,) contains language to the contrary:
"The central feature of § 12S was its provision that a state-court judge could make the ultimate decision, when necessary, as to the exercise by a minor of the right to an abortion. See [Bellotti I, infra], [428 U.S.] at 145 [96 S.Ct. at 2865]. We held that this `would be fundamentally different from a statute that creates a "parental veto" [of the kind rejected in [Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) ]].' Ibid. (footnote omitted). Thus, all Members of the Court agreed that providing for decisionmaking authority in a judge was not the kind of veto power held invalid in Danforth."

443 U.S. at 652, 99 S.Ct. at 3052, in note 32 to opinion of Powell, J. (some brackets in original).
In Bellotti v. Baird, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) (Bellotti I), the unanimous Court remanded the case for an interpretation of the statute at issue by the Supreme Judicial Court of Massachusetts. In addition to the statements cited in the Bellotti II footnote above, the Court stated:
"We do not accept appellees' assertion that the Supreme Judicial Court of Massachusetts inevitably will interpret the statute so as to create a `parental veto,' require the superior court to act other than in the best interests of the minor, or impose undue burdens upon a minor capable of giving informed consent."
Id., at 147, 96 S.Ct. at 2866.
Without the premise that a judicial determination is an impermissible "absolute veto," the Court of Civil Appeals' conclusion, that a judicial proceeding as the sole means of obtaining an abortion imposes an undue burden, must also fall. The standards under which the juvenile or other trial court is to decide whether to waive the consent requirement are specifically set out in Bellotti II and are exactly those found in our parental consent act: The court shall waive the requirement if the minor is sufficiently mature and well-informed to make her own decision, or if the abortion is in her best interest. Bellotti II, 443 U.S. at 647-48, 99 S.Ct. at 3050-51; Ala.Code 1975, § 26-21-4(f). See, also, City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 439-42, 103 S.Ct. 2481, 2497-99, 76 L.Ed.2d 687 (1983). The parental consent act and court rules provide for confidential, expedited appellate review of decisions under this act, as required by the United States Supreme Court, so the possibility of an arbitrary refusal is prevented to the extent that is humanly possible.
A plurality of the United States Supreme Court has said that "every minor must have the opportunityif she so desiresto go directly to a court without first consulting or notifying her parents." Bellotti II, 443 U.S. at 647, 99 S.Ct. at 3050. That Court has not said that the failure to provide, in every instance, an alternative to a court proceeding imposes an undue burden. While the Court has acknowledged that court proceedings are burdensome (see, e.g., Bellotti II, n. 22, p. 643, 99 S.Ct. n. 22, p. 3048), the frequent necessity of such proceedings dictates against the conclusion that the burden they pose is too great to withstand constitutional scrutiny.
In many cases, as in this one, the minor will be a ward of the state or otherwise will not have a parent or legally appointed guardian to turn to for consultation, advice, and supervision. But this does not mean that the statute is constitutionally deficient for its failure to provide another alternative to a court proceeding. The absence of a parent or guardian merely constitutes an additional circumstance justifying judicial supervision of the minor's liberty to make her own decision. To be sure, the minor's conditional right to exercise her constitutional choice of an abortion is further protected by her right of legal counsel. Although the act does not specifically provide for a guardian ad litem, the prerogative of the trial court to make such an appointment is provided, e.g., in Ala. Code 1975, §§ 26-2A-52 and 12-15-8. We *905 hold that the attorney to be appointed under the parental consent act is to be a guardian ad litem, and that future appointments should be so designated and shall entail the responsibilities attendant to such appointments.
The court's failure to designate the attorneys appointed in this case as guardians ad litem does not, however, cause the parental consent act to be unconstitutional as applied to this minor. The State's legitimate interest in providing for supervision of minors allows it to place certain burdens on their exercise of their right to an abortion. In the overall scheme of our parental consent act, the residuary provision for judicial inquiry into maturity and best interest, where the minor cannot otherwise obtain consent, bears a reasonable relation to the State's interest in protecting minors from harmful consequences of their immaturity.
Thus, the juvenile court did not err in overruling the motion of the minor's attorneys for a holding that the parental consent act is unconstitutional as applied to the facts of this case, and the Court of Civil Appeals incorrectly reversed the judgment on that ground.[3]
Our disagreement with the Court of Civil Appeals on the issue of unconstitutional application of the statute does not mean that the judgment of the juvenile court is due to be affirmed. The juvenile court initially found only that the minor was not mature enough to make her own decision regarding an abortion. The record before us supports that finding. Cf. Matter of Anonymous, 515 So.2d 1254 (Ala. Civ.App.1987). Here, there is ample objective evidence of immaturity, although we do note that the minor, in giving testimony, was coherent and consistent in saying that she wanted an abortion, that she did not want to have the baby, that she could not take care of a baby, or even of herself, and that both of her aunts agreed with her decision.
The juvenile court's amended finding that an abortion is not in the minor's best interest presents a wholly different question. The court's recitation that "the child is only 12 years old & the prognosis for delivery is fair" tends to undercut, not to support, its finding. As the minor's attorneys have pointed out, the pregnancy is the result of a statutory rape because the father is 16 years old and the minor is 12 (see Ala.Code 1975, § 13A-6-61(a)(3)):
"I'm just going to argue that it's certainly in the best interest of this child which is why the statute was written. I would also argue to this Court that this pregnancy is a result of a rape in that she was twelve and the perpetrator in this case was sixteen and by statute the difference between twelve and sixteen is rape in the second degree, and as she does not have the ability to consent at that age, I would argue to the Court that it was a rape [and] that, if for no other reason, the petition should be granted for that reason.
"And I would also argue that it would be in the child's best interest for the petition to be granted."
The facts that the minor is a ward of the State, that she has no family to turn to for support (after her mother went to Bryce hospital, she was in the custody of an aunt for a time, but the aunt petitioned for and was granted relief from custody, whereupon the minor was put in the custody of DHR), and that her family has a history of psychological problems, all add to the facts of her tender years and her only "fair" (not "good") prognosis for delivery of the baby in indicating that it is not in her best interest to carry to term and deliver.
The plurality in Bellotti II indicated some considerations relevant to a finding that an abortion is not in a minor's best interest:
"[A]n abortion may not be the best choice for the minor. The circumstances *906 in which this issue arises will vary widely. In a given case, alternatives to abortion, such as marriage to the father of the child, arranging for its adoption, or assuming the responsibilities of motherhood with the assured support of family, may be feasible and relevant to the minor's best interests. Nonetheless, the abortion decision is one that simply cannot be postponed, or it will be made by default with far-reaching consequences."
443 U.S. at 642-43, 99 S.Ct. at 3048. None of these factors was shown to exist here; if anything, the evidence tends to indicate their absence.
The only finding by the court that arguably supports a conclusion that an abortion is not in the minor's best interest is the finding that the minor was 14-16 weeks pregnant. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), established the trimester analysis, including the principle that the state's interest in the mother's health becomes sufficiently compelling some time around the beginning of the second trimester of a pregnancy, about 13-15 weeks into the pregnancy, to justify more stringent health regulations on the performance of abortions.
In City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), the Court reaffirmed the Roe v. Wade trimester analysis, but emphasized that it was not absolute and that changes in medical technology in the intervening decade made it even less nearly absolute than it had been. For example:
"[T]he Court in Roe did not hold that it always is reasonable for a State to adopt an abortion regulation that applies to the entire second trimester. A State necessarily must have latitude in adopting regulations of general applicability in this sensitive area. But if it appears that during a substantial portion of the second trimester the State's regulation `depart[s] from accepted medical practice,' supra, [462 U.S.] at 431 [103 S.Ct. at 2493], the regulation may not be upheld simply because it may be reasonable for the remaining portion of the trimester."
462 U.S. at 434, 103 S.Ct. at 2495.
"Since [Roe], however, the safety of second-trimester abortions has increased dramatically. The principal reason is that the D & E [dilation and evacuation] procedure is now widely and successfully used for second-trimester abortions. ... The availability of the D & E procedure during the interval between approximately 12 and 16 weeks of pregnancy, a period during which other second-trimester abortion techniques generally cannot be used, has meant that women desiring an early second-trimester abortion no longer are forced to incur the health risks of waiting until at least the 16th week of pregnancy."
Id., at 435-36, 103 S.Ct. at 2495-96.
"Similarly, the ACOG [American College of Obstetricians and Gynecologists] no longer suggests that all second-trimester abortions be performed in a hospital. It recommends that abortions performed in a physician's office or outpatient clinic be limited to 14 weeks of pregnancy, but it indicates that abortions may be performed safely in `a hospital-based or in a free-standing ambulatory surgical facility, or in an outpatient clinic meeting the criteria required for a free-standing surgical facility,' until 18 weeks of pregnancy."
Id., at 437, 103 S.Ct. at 2496.
We pretermit at this time any discussion or observations regarding the inordinate delay before the pregnancy of this minor child, who is a ward of the state, was brought to the attention of an appropriate court.
In the absence of specific medical testimony that an abortion would be unsafe for this minor with her pregnancy in its 14th to 16th week, the trial court's citation of that fact does not support its conclusion that an abortion is not in the minor's best interest. Of course, the pregnancy is four or five weeks further along at this time, but the minor should not, in effect, be penalized for the unexplained delays.
*907 There being no evidence supporting a finding that the abortion is not in the minor's best interest and overwhelming evidence that it is, the trial court erred in denying the waiver of consent. The health concerns arising from the duration of the minor's pregnancy should now be a matter for the minor and her physician, who presumably will follow any appropriate state law or regulations reasonably related to protection of a woman's health at this stage in a pregnancy. Because we hereby grant a waiver of consent, a physician will not need to request any written consent under the provision of § 26-21-3(a).
The judgment of the Court of Civil Appeals, insofar as it reverses the juvenile court's denial of the minor's petition for waiver of parental consent, is affirmed. However, due to the exigencies of the case and the undue delay previously noted, we must reverse the judgment of remand entered by the Court of Civil Appeals. To follow the normal procedure of remand in this case might, at least in combination with the previous delays, cause the United States Supreme Court to hold the parental consent statute unconstitutional as imposing an impermissible "court veto" (through delays that "make the decision by default"), analogous to the "parental veto" disallowed in Planned Parenthood v. Danforth and Bellotti II.[4] Therefore, because of the urgency of the matter, this Court renders a judgment granting a waiver of the requirement of parental consent.
AFFIRMED IN PART, REVERSED IN PART, AND JUDGMENT RENDERED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY and HOUSTON, JJ., concur.
MADDOX, ADAMS and STEAGALL, JJ., concur in part and dissent in part, with separate opinions.
MADDOX, Justice (concurring in part and dissenting in part).
I concur in that portion of the opinion that holds that the Parental Consent Act is constitutional as applied to this particular minor. I must respectfully disagree, however, with that portion of the opinion that reverses the judgment of the trial court and renders judgment contrary to the holding of the trial court that an abortion is not in the best interest of this particular minor. I disagree for two reasons: (1) the attorneys representing the minor specifically waived this issue; therefore, the Court of Civil Appeals did not address it and it is not properly before us, and (2) this particular record does not contain sufficient medical testimony concerning the effects of an abortion upon this particular minor for us to make a decision as to her best interest, even if we could properly reach the issue.
The record indicates that this minor became pregnant in February 1988, and that she was placed in the custody of the Department of Human Resources by court order on April 18, 1988, at which time the court ordered that the child be evaluated on May 13, 1988. She was first examined at the Jefferson County Health Department Central Health Clinic on May 12, 1988. At that time, a urine specimen was taken and a sonogram was made. She was scheduled to have a pelvic examination the next day, May 13, 1988, but according to testimony of the social worker, "the child apparently felt uncomfortable" and refused to be examined. She was given a psychological examination on May 17, 1988, the day before the hearing, but the record of that examination was not available at the time of the hearing on May 18, 1988. She was examined again on the morning of the hearing. The minor's petition for waiver of consent was filed on May 16, 1988. She was accompanied to the court by a social worker employed by DHR. In her pleadings, she requested that an attorney be appointed to represent her, and the court *908 appointed the two attorneys who represent the minor in this Court.
The only medical evidence in the record concerning whether an abortion would be in the best interest of the minor is the notation on the clinical record of the examination on May 12: "Prognosis for Delivery: Fair."
There is nothing in the record to indicate that the Department of Human Resources or any other state agency or official knew that the minor was pregnant until she was examined on May 12, 1988. At the time her petition for a waiver was filed, she was already in her second trimester.
There was in the record evidence that the minor did not notify her grandmother that she was pregnant, but that she did notify her aunt, who at one time had custody of her, and that this aunt did suggest that she have an abortion. In any event, nether the minor nor any of her relatives took any legal steps to have an abortion before the petition was filed.
I point out these particular facts to show that it appears that the State of Alabama and its agents moved expeditiously when it became apparent that the minor was pregnant. In any event, the minor was 14 to 16 weeks pregnant at the time she filed her petition for a waiver of parental consent; the trial court acted within the required 72 hours after the petition was filed, the Court of Civil Appeals decided the case expeditiously, and this Court has done the same.
The notice of appeal was filed on May 25, 1988, one week after the hearing and the court order denying the waiver. On appeal, the attorneys argued only the constitutionality of the Parental Consent Act as it applied to the minor. They filed a document in the Court of Civil Appeals styled "Notice of Waiver of Issues," in which they averred as follows:
"Comes now E. Hampton Brown and Wendy Brooks Crew, attorneys for [the minor], and gives written notice to the Court, that the appellant waives all issues submitted to the Court in written brief and oral argument, excepting the question of the constitutionality of The Parental Consent to Performing Abortion Upon Minor [Act], Code of Alabama 1975, § 26-21-1 and the constitutional questions of whether the Parental Consent to Performing Abortion Upon Minor [Act], Code of Alabama 1975, § 26-21-1 is constitutional as applied to the facts of this case."
I recognize that further delay in resolving this matter could cause the minor's judicial remedy to be ineffective, and, therefore, unconstitutional, but I do not believe that this Court should render judgment in the cause; rather, I think this Court should remand it to the trial court to conduct another hearing immediately to allow the minor to produce medical evidence, if she could, which would show that it would be in her best interest to abort the pregnancy.
I realize that there has been a substantial delay from the time the minor became pregnant until she petitioned the court for a waiver, but I cannot, on the record before us, attribute all of that delay to the State of Alabama; I do not think the State's actions constituted a "veto" of her right.
Medical testimony could very well show that, in the opinion of the experts, it would be in the best interest of this minor to abort this pregnancy, even though she is in her second trimester, cf. City of Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed. 2d 687 (1983); but on this record, I cannot grant her waiver.
ADAMS, Justice (concurring in part and dissenting in part).
I concur in that part of the majority opinion upholding the constitutionality of the parental consent statute. There is no denial of equal protection of the law where a minor child does not have a parent or guardian whom she can consult prior to filing a petition with the juvenile court for a judicial bypass. The statutory scheme properly recognized that in the ordinary course of events, there would be many minors similarly situated to the minor in this case. To recognize this fact of life makes the statute entirely rational and not *909 arbitrary, capricious, or discriminatory. Furthermore, the fact that the minor must petition the juvenile court for a decision as to whether she can have an abortion does not give the court an absolute veto over the minor's choice. To reach such a conclusion, we would have to say that in every case the court would be opposed to the minor's request. We must presume that the court would weigh both sides and reach an appropriate decision.
On the other hand, I must dissent from that part of the majority's opinion going to the merits of this case. Inasmuch as the minor's attorneys have asked our decision only on the constitutional issue, the question as to whether the trial judge was right in disallowing an abortion is not properly postured for our decision. We should not reach out and decide issues that are not properly before us. This is especially true where the decision involves life or death. A decision on the merits is further complicated by the fact that the record before us is inadequate. There is no expert medical testimony comparing the risk of life or death to the minor in having an abortion now, while she is presumably in the middle of the second trimester, and in carrying the child to full term. The majority decides this important issue by inference and failure of proof. I would not decide such an important issue by inference and failure of proof.
STEAGALL, Justice (concurring in part; dissenting in part).
I agree with that portion of the opinion that upholds the constitutionality of the parental consent act; I agree that the Court of Civil Appeals incorrectly ruled on that issue. However, without further medical testimony, I cannot agree that the judgment of the juvenile court, holding that an abortion is not in the best interest of the minor, should be reversed. Rather, in view of the length of time that has elapsed during the pendency of this matter and in view of the age of this minor and her apparent immaturity, I would remand the case directly to the juvenile court with instructions to develop additional medical testimony immediately and reevaluate whether it is in the best interest of the minor from a medical standpoint to have the abortion.
NOTES
[1] The DHR social worker responsible for the minor, speaking in response to a question about DHR's seeing that the minor obtained an abortion if the court granted a waiver of consent, testified: "We could not be responsible financially." The minor's attorneys have provided copies of DHR's Foster Care Manual, which provides, among other things, that "Policies of the Department prevent the worker from assuming any responsibility for or participating in securing `informed consents'" for abortions. DHR has also provided a copy of an excerpt from the Federal Register regarding proposed rules on "Statutory Prohibition on Use of Appropriated Funds in Programs Where Abortion is a Method of Family Planning; Standard of Compliance for Family Planning Service Projects." 52 Fed.Reg. No. 169, p. 33,210 (1987). We express no opinion regarding the duties of a department of the State of Alabama which has custody of a minor and takes the position that the mere receiving of Federal funds abrogates its otherwise clear statutory and lawful duty of protecting the best interest of the minor.
[2] She did have a guardian ad litem when she was committed to DHR's custody by the juvenile court on April 18, 1988.
[3] The minor's attorneys raise numerous objections to the constitutionality of the statute as written. At least insofar as it allows a court to make a determination as to maturity and best interest, as discussed above, the parental consent act complies with the U.S. Supreme Court's recent cases cited in this opinion. We decline to address the other arguments of unconstitutionality under the posture of this case.
[4] The State finds itself in a "catch-22" position. It seeks to uphold the constitutionality of the statute, yet the State's inordinate delay in seeking court guidance has very nearly run afoul of the United States Supreme Court's requirement that procedures limiting a minor's liberty interest in choosing an abortion cannot cause the decision to be "made by default," Bellotti II, 443 U.S. at 643, 99 S.Ct. at 3048.