S.R.J., an unemancipated 17-year-old, petitions this Court for review of the judgment of the Court of Civil Appeals affirming the judgment of the trial court denying S.R.J.'s request for a waiver of parental consent to an abortion. The trial court found that S.R.J. is not sufficiently mature to obtain judicial permission to have an abortion without parental consent under Ala. Code 1975, § 26-21-1 et seq. S.R.J. filed her petition for a waiver of parental consent on June 29, 2001. On July 3, 2001, after conducting a hearing on S.R.J.'s petition the preceding day, the trial court entered an order denying the petition. In pertinent part, the order stated:
 "The operative words setting the basis for the granting of the petition are:
 "(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
 "(2) That performance of the abortion would be in the best interest of the minor.
 "An abortion is not in the petitioner's best interest. The risks attendant upon an abortion, physical and emotional, immediate and long-term, far outbalance her desire to escape from the predicament in which she finds herself, regardless of her willingness to assume those risks.
 "Yet she has another alternative. Even if she cannot satisfy the Court that an abortion is in her best interest, she can obtain relief if she is `mature and
well-informed enough to make the abortion decision on her own.' (Emphasis added [by trial court].)
 "She must be mature and well-informed. The qualifiers are conjunctive, not alternative. The terms are not synonymous. S.R.J. has shown herself to be well-informed. She testified as to the abortion procedure itself. She is well-informed as to how it will be done, as to the risks involved, as to the alternatives to abortion. [Two pregnancy-counseling clinics] have given her that information and she can recite it back from the stand. She is well-informed enough to make the decision.
 "But is she mature enough? The Court is not satisfied that she is mature enough. Knowledge is not maturity.
 "She testifies that she has a sexually active older sister, 19 years old, on birth control pills, living in the family home (they share a telephone line). She could talk to her sister and she would talk to her if there were post-abortion problems, but she has not sought her advice.
 "She testifies that her mother's best friend is available for consultation; a *Page 788 
mature woman who has offered counseling to S.R.J. and her sister. She could talk to her and she could go to her for help if there were post-abortion problems, but she has not sought her advice.
 "She has never talked with a woman who has lost a child. She has talked to a schoolmate who had an abortion but this was before she became sexually active herself. It is unlikely that that conversation has had any effect on this situation.
 "Her most important previous decision was made about six months ago when she decided to engage in sexual intercourse with her 20-year-old boyfriend. She testified that she realized that there was a danger of pregnancy but seems to have been satisfied that condoms would eliminate that risk. In order to make a mature decision then, should she not have consulted with her sister as to why she was taking birth control pills?
 "It is obvious that she simply does not want anyone to know of her situation.
 "There is an intact family unit. Her parents are together. They would be disappointed but she believes that they would be supportive of her. She plans to marry the baby's father at some time in the future. They have been dating for 20 months. Her parents know that and have no problem with her choice of a husband.
 "The baby's father will support her decision. He has a good job, making $13.00 per hour. She makes $7.00 per hour in her summer job. Finances are not a problem.
 "The Court's decision cannot be based upon what the parents would say if she sought their permission but the Court ought to be able to consider her reasons for not wanting to tell her parents, as those reasons bear on her maturity.
 "There is a mature woman available to S.R.J. who has faced the same situation, who loves her, and who wants the very best for her. That woman is her mother, who conceived and bore the older sister out of wedlock and then married that child's father. S.R.J. is the fruit of that marriage and that experience.
 "Apparently, S.R.J. has talked only with [counselors at two pregnancy-counseling clinics] and her boyfriend. She simply does not want anyone else to know. If S.R.J. were mature enough to make this decision on her own, would she not have sought the counsel of her sister, or her mother's friend? Given the singular family history, would a mature 17-year-old have sought her mother's counsel rather than file this petition?
 "It is the finding of this Court that S.R.J., while well-informed, is not mature enough to make this decision on her own nor is an abortion in her best interest."
The trial court's order contains no finding concerning, and does not otherwise reference in any way, S.R.J.'s demeanor during the hearing.
The Court of Civil Appeals affirmed the judgment of the trial court without an opinion, citing this Court's opinion in Ex parte Anonymous,803 So.2d 542 (Ala. 2001). Presiding Judge Yates dissented. Inre Anonymous, 810 So.2d 784 (Ala.Civ.App. 2001).
S.R.J. presents three issues for this Court's review: (1) whether the trial court erred by holding that the abortion was not in her best interest; (2) whether the trial court's finding that S.R.J. was not mature enough to satisfy § 26-21-4 is reversible error, in light of the evidence presented; and (3) whether the trial court violated *Page 789 
S.R.J.'s constitutional rights by appointing a lawyer to represent the fetus.
In addition to the facts noted by the trial court in its order, the record discloses the following facts. S.R.J. will be a senior in high school in the coming school year and she made A's and one B in her junior year. S.R.J. has a full-time summer job, and she plans to work part-time during the coming school year. She stated that she maintains a checking account and that she pays for personal expenses such as telephone bills, fuel for her automobile, and clothing. She stated that she was five and one-half weeks pregnant at the time of the hearing. She had discussed her pregnancy with her boyfriend and they had decided that they were not prepared to have and to rear a child. She stated that she was aware of the stigma that attended young women when they attempted to complete school while they were pregnant, and she believed most young women in that situation simply dropped out of school. S.R.J. also stated that she did not believe that her parents would consent to an abortion. After discussing the medical procedures involved in an abortion and the alternative resources available if she chose to have the baby, S.R.J. stated:
 "I'm not financially ready to have a baby. I'm not emotionally ready to have a baby. I don't think that if I had a baby 24 hours a day that — I'm just not ready to have a baby 24 hours a day. I'm not married. I'm still in school, and I want to go to college and do what I've always wanted to do."
S.R.J. also explained that she was hypoglycemic and that her health was "not really good." She testified that she attended church regularly, that she had prayed about her decision to seek an abortion, and that she was satisfied that she was doing the right thing.
Before the hearing, the trial judge appointed a guardian ad litem to represent S.R.J.'s fetus. In his comments at the beginning of the hearing, the trial judge stated:
 "I don't know anything about the case or anything about you, but I sympathize with the situation that you find yourself. And what we have to do today is not for the purpose of embarrassing you, hurting your feelings, putting you through some big rigmarole, something like that. But what you have asked the Court to allow you to do is something that is extremely serious and fatal for your child. And it has been my practice for three years now when I'm faced with these cases to not only have a lawyer for you but to have a lawyer to represent the interest of the unborn child."
The lawyer appointed for the fetus, described in the record as a guardian ad litem, subjected S.R.J. to a probing cross-examination concerning her knowledge of the negative consequences of undergoing an abortion and the possible consequences, including depression, sterility, and death. The appointed lawyer's cross-examination also explored at some length S.R.J.'s knowledge of the alternatives to abortion, including having her family help raise the baby or placing the baby for adoption. S.R.J. testified that she did not want to impose on her family the expenses and work of rearing her child and that she was not satisfied that, if adopted, the baby would not be abused. The attorney for the fetus also cross-examined S.R.J. concerning the fact that her mother had become pregnant with her older sister before her mother married. She explained that her mother's situation was different from hers because when her mother became pregnant she had graduated from college and was working full-time. *Page 790 
S.R.J.'s first two arguments — that the trial court erred in finding that an abortion would not be in her best interest and that the trial court erred in finding that she was not sufficiently mature to make the decision to obtain an abortion on her own — both challenge the findings of the trial court. For that reason, we consider those arguments together. The standard of review we apply to a trial court's findings of fact in a case such as this is set out in Ex parte Anonymous,803 So.2d 542 (Ala. 2001) ("Ex parte Anonymous I"). In the opinion in that case this Court overruled previous precedent concerning the application of the ore tenus rule to undisputed testimony in an abortion case. This Court stated:
 "We find that in a case where a minor seeks a waiver of parental consent for an abortion and no adverse party cross-examines her or otherwise challenges her testimony, a rule compelling acceptance of undisputed live testimony as true — without affording any deference to the trial court's ability to observe and assess the demeanor of the witness — is unsound. In such a case — where the trial court has had the opportunity to observe the witness and where assessments of the level of the minor's maturity are crucial — the trial court's findings should be afforded considerable deference. Here, the trial judge had the responsibility of determining the facts. In particular, it was the trial judge's responsibility to determine whether the petitioner is mature enough and well-informed enough about the abortion procedure to make an independent decision whether to undergo an abortion without parental consent. See § 26-21-4(f), Ala. Code 1975. In addition to hearing the testimony, the trial judge could observe the minor and could consider her demeanor as she testified. That aspect of the evidence is denied an appellate court by a cold record. The trial judge was in a far better position than are we to determine, as a matter of fact, the minor's maturity and level of knowledge. The Legislature has mandated that a decision to grant or to deny a waiver of the requirement of parental consent is to rest upon an evaluation of the minor's maturity and level of knowledge. We conclude that because the decision must be based upon facts gleaned from the testimony best evaluated by the trial court, the ore tenus rule should apply."
803 So.2d at 546-47 (footnote omitted).
In Ex parte Anonymous, 806 So.2d 1269 (Ala. 2001) ("Ex parte Anonymous II"), this Court reaffirmed its holding in Exparte Anonymous I regarding the application of the ore tenus rule in waiver-of-parental-consent cases. The Court noted that the trial court's findings concerning the minor's demeanor, i.e., her "composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reason and conclusions," 806 So.2d at 1274, were due the presumption of correctness afforded by the ore tenus rule.
 "The petitioner would have us hold, as a matter of law, that the facts in the instant case are sufficient to demonstrate that she is mature and sufficiently well-informed to receive a waiver of parental consent for an abortion. This we are not prepared to do. Words in a transcript that suggest maturity may, in fact, be disputed by the delivery of the witness's own testimony and by her demeanor. As we have already stated, the trial court is in the best position to determine these factual issues."
Ex parte Anonymous II, 806 So.2d at 1278. Thus, where the trial court bases its findings in part on its assessment of the petitioner's demeanor in a proceeding *Page 791 
where the minor is not subject to cross-examination, this Court now affords those findings "considerable deference." Ex parte Anonymous I,supra, 803 So.2d at 546.
In this case, however, the trial court made no finding concerning S.R.J.'s demeanor. Indeed, by virtue of its detailed explanation of all the factors and considerations it relied upon in making its determination that S.R.J. was not sufficiently mature, we may readily infer that it did not base that finding to any degree on her demeanor. Unlike the situation in Ex parte Anonymous II, where the trial court, in its order, made findings concerning the petitioner's demeanor, in this case we have only those facts contained in the record and in the trial court's order. Further, this was not a "nonadversarial" proceeding. S.R.J. was cross-examined by a lawyer appointed to represent the fetus, and she adhered to her testimony and to her position that an abortion was the most appropriate course of action for her, despite being given full exposure, through an extended cross-examination, to opposing viewpoints that strongly emphasized the negative effect of the abortion procedure and that advocated the benefits of having the child. Thus, unlike the situations in Ex parte Anonymous I and Ex parte Anonymous II, the format and conduct of the hearing in this case countered the two rationales applied in those cases for affording the trial court's findings a blanket presumption of correctness. Further, the heightened deference given by this Court to a trial court's findings of fact by the application of ore tenus rule does not amount to a conclusive presumption that the trial court's findings are correct. The new application of the ore tenus rule in Ex parte Anonymous I did not change the long-settled rule that a judgment based on findings of fact that are "plainly erroneous or manifestly unjust" must be reversed. Ex parte Anonymous I, 803 So.2d at 547, quoting Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala. 1984). See also Ex parte Anonymous II, supra, and Hall v. Mazzone,486 So.2d 408 (Ala. 1986).
We also consider the trial court's findings in a waiver-of-parental-consent case in light of the following statutory mandate, often quoted by this Court:
 "The requirement of parental consent shall be waived if the trial court hearing the minor's petition finds either:
 "`(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
 "`(2) That performance of the abortion would be in the best interest of the minor.'"
Ex parte Anonymous I, supra, 803 So.2d at 544 (quoting Ala. Code 1975, § 26-21-4(f)) (emphasis added). The Legislature has declared that a minor has a right to obtain an abortion without her parent's consent, unless the trial court makes particular findings to the effect that she is unable to make such a decision on her own. See Ex parte Anonymous,664 So.2d 882 (Ala. 1995), and In re Anonymous,782 So.2d 791 (Ala.Civ.App. 2000). This Court is bound to follow that statutory mandate, regardless of any personal convictions that might lead an individual Justice to some other result, and regardless of any personal disagreement with the controlling federal constitutional principles set out by the United States Supreme Court in Bellotti v. Baird,443 U.S. 622 (1979), and Roe v. Wade, 410 U.S. 113 (1973). Ex parteAnonymous, 664 So.2d 882 (Ala. 1995); Ex parte Anonymous, 618 So.2d 722
(Ala. 1993). *Page 792 
The trial court's order explicitly stated that it found that S.R.J. was "well-informed" enough to make the decision concerning her abortion, thus satisfying that aspect of § 26-21-4(f)(1). It also found that an abortion was not in S.R.J.'s best interest and that she was not mature enough to make the decision whether to have an abortion. Its order in this case is supportable only if those findings are not erroneous under the authority discussed in Ex parte Anonymous I and Ex parte AnonymousII.
The trial court found that an abortion was not in S.R.J.'s best interest because the "risks attendant upon an abortion, physical and emotional, immediate and long-term, far outbalance her desire to escape from the predicament in which she finds herself, regardless of her willingness to assume those risks." The only evidence in the record pertinent to such a finding is S.R.J.'s testimony concerning her knowledge of the possible adverse consequences of having an abortion. The trial court's finding appears to be based on a generalized apprehension of the possible consequences of an abortion rather than based on the facts developed in the record. Even given the presumption of correctness afforded the trial court's findings by the ore tenus rule, such a conclusory finding is a cause for concern when it is asserted as the basis for denying a right specifically conferred by a statute.
With respect to determining whether S.R.J. was "mature . . . enough to make the abortion decision on her own," the trial judge carefully articulated his finding that she was not adequately mature by noting the following factors: (1) she could have talked to her sexually active 19-year-old sister, but did not; (2) she could have talked to her mother's best friend, but did not; (3) she did not talk to any woman who had lost a child, and (4) she had thought before her pregnancy that condoms were an effective means of birth control. The trial court also considered the fact that S.R.J. had not discussed her situation with her mother. In this regard, the trial court queried whether a "mature 17-year-old [would] have sought her mother's counsel rather than file this petition." The trial judge apparently found S.R.J., who stated that she does not want to discuss her situation with her parents, to be immature because she filed this petition rather than consulting with her mother or other persons who are either a part of her family or very close to the family. The judgment indicates that the trial court concluded that S.R.J. is immature because, regardless of how well-informed she is, she had not discussed her situation with certain people, including her mother, and her desire not to discuss her situation with those people indicated her immaturity.
S.R.J. makes a strong argument that the trial court's judgment denying her petition is dependent on two findings: (1) that an abortion is not in S.R.J.'s best interests based upon the trial court's assessment of the effects of abortion generally and without particularized evidentiary support, and (2) that S.R.J. is immature because, no matter how well-informed she is, she seeks to obtain a waiver of parental consent without having talked to her sister, her mother's best friend, any woman who had lost a child, or her mother, and because she had thought condoms were an effective means of birth control. The trial court's rationale would essentially undermine the Legislature's carefully constructed procedure for providing minor females a procedure through which they can exercise their constitutional right, as declared by the United States Supreme Court, to obtain an abortion; that procedure allows the minor to pursue an abortion without the necessity for parental consent, under certain *Page 793 
specified circumstances. The order could be read to require a minor first to discuss her situation with a parent before she could show that she was sufficiently mature to obtain a waiver of that consent. Such a requirement would render the waiver-of-parental-consent statute meaningless and thereby run afoul of the basic rule of statutory construction that the courts must interpret and apply statutes so as to give them effect. See, e.g., Ex parte Stewart, 730 So.2d 1246 (Ala. 1999); Ex parte Employees' Retirement System of Alabama, 644 So.2d 943
(Ala. 1994). More critically, such a requirement would directly conflict with a minor's constitutional right to obtain an abortion in certain situations set out by the United States Supreme Court in Bellotti v.Baird, 443 U.S. 622 (1979).
We assume, however, that the trial judge knows the law and that he would not intentionally seek to avoid the application of federal constitutional law or deprive the minor of the rights conferred by the statutes of this state, Ex parte Slaton, 680 So.2d 909 (Ala. 1996); Exparte Harrell, 470 So.2d 1309, 1318 (Ala.), cert. denied, 474 U.S. 935
(1985); and Brewer v. Hatcher Limousine Service, Inc., 708 So.2d 163
(Ala.Civ.App. 1997). Accordingly, we consider the judgment before us in a constitutionally appropriate narrow sense.
As previously discussed, the trial judge's finding that S.R.J. is not sufficiently mature to make her own decision concerning an abortion rests on her testimony that she did not discuss her situation with her mother or with other persons mentioned in the order and that before she became pregnant she had thought condoms provided effective birth control. Under the approach established in Ex parte Anonymous I, supra, we begin with the presumption, arising out of the ore tenus rule, that the trial court's finding as to S.R.J.'s maturity is correct. However, despite our clear expression in Ex parte Anonymous II, supra, of the importance of the trial court's observations of the petitioner's demeanor in determining the minor's credibility and maturity, the trial court has omitted from its order any reference to S.R.J.'s demeanor at the hearing on the petition. Further, S.R.J. was thoroughly cross-examined, and, in the end, the trial court concluded from her testimony that she was well-informed. The record therefore supports the inference that the trial court found S.R.J. to be credible. Under these circumstances, where there is no identifiable basis for disregarding S.R.J.'s testimony, there would be no justification for simply affirming the judgment without considering how this Court has evaluated comparable evidence in other cases.
In Ex parte Anonymous, 618 So.2d 722 (Ala. 1993), this Court held that the minor petitioner's desire that her parents not discover her situation and her worries about embarrassment did not support a finding that she was immature. We stated:
 "The error of the trial judge lies in placing undue weight on the minor child's responsibility to consult with her parents. Although the trial judge is allowed to take into consideration the relationship of the child with her parents and the sympathetic or unsympathetic attitude of the parents, this should not be the main focus of the trial judge's deliberation. Whether we agree with Roe v. Wade 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), or not, the Supreme Court of the United States has determined that the main focus should be on the woman's or minor female's right to decide what should be done with *Page 794 
her body within certain defined limitations. The constitutionality of the parental consent statute rests mainly on the premise that a child of tender years may not be thoroughly mature enough to make the decision to terminate a pregnancy even within the first trimester. However, if it can be demonstrated that she is sufficiently mature or that an abortion would be in her best interest, then she should be given a waiver of parental consent."
618 So.2d at 725. Perhaps even more to the point for this case, we stated:
 "Furthermore, it is not the [trial] court's responsibility to superimpose its judgment or its moral convictions on the minor in regard to what course of action she should take with reference to her own body. It is not a question of whether she is making a decision that we would approve of, but whether she is making a mature decision or one in her best interest."
Id. See also Ex parte Anonymous, 664 So.2d 882 (Ala. 1995).
This Court and the Court of Civil Appeals have also had occasion to consider what evidence shows sufficient maturity to satisfy the criteria of Ala. Code 1975, § 26-21-1 et seq., and thereby to require the grant of a waiver. For example, the Court of Civil Appeals has held that evidence that the minor had discussed her pregnancy with the father, educated herself about the procedures and consequences of abortion, determined that she was not emotionally prepared to be a parent, and expressed a desire to complete high school and college before having children is evidence that "overwhelmingly supports the issuance of the waiver of parental consent." In re Anonymous, 718 So.2d 64 (Ala.Civ.App. 1998). See also Ex parte Anonymous, 664 So.2d 882 (Ala. 1995). In In reAnonymous, 770 So.2d 1107 (Ala.Civ.App. 2000), the Court of Civil Appeals held that evidence that the minor was well-informed about the medical procedures and had obtained information from counseling centers was sufficient to demonstrate the requisite maturity to warrant granting a waiver of parental consent. In Ex parte Anonymous, 664 So.2d 882, supra, this Court also held that evidence that the minor petitioner sought the advice of legal counsel and invoked the judicial process to obtain a waiver of consent was evidence of maturity that supported a finding that the minor was sufficiently mature to make her own decision concerning obtaining an abortion. See also Ex parte Anonymous, 595 So.2d 497 (Ala. 1992); In re Anonymous, 711 So.2d 475 (Ala.Civ.App. 1998); In reAnonymous, 650 So.2d 919 (Ala.Civ.App. 1994).
In summary, the trial court's findings make no mention of S.R.J.'s demeanor, and the clear import of the judgment is that the trial court found S.R.J. to be credible. An analysis of S.R.J.'s testimony concerning her reasons for seeking a waiver of parental consent under § 26-21-1
et seq., shows that she has presented clear testimony covering all of those factors this Court and the Court of Civil Appeals have repeatedly found to support a finding of sufficient maturity to warrant granting a waiver of parental consent to abortion. Moreover, those cases have held that facts comparable to those the judge in the instant case relies upon to indicate a lack of maturity — i.e., that S.R.J. has not consulted with her sister, etc. — are not sufficient to support such a finding on the record before this Court. Even under the heightened presumption of correctness afforded the trial court's findings by Ex parteAnonymous I, supra, and Ex parte Anonymous II, supra, we conclude that the judgment is contrary to the caselaw reviewed above and that the Court of Civil Appeals *Page 795 
erred in affirming that judgment. In light of our holding, we pretermit any discussion of S.R.J.'s argument concerning the trial court's appointment of a lawyer to represent the fetus.
Accordingly, the judgment of the Court of Civil Appeals is reversed, and a judgment is entered granting a waiver of parental consent.
REVERSED AND JUDGMENT RENDERED.
Houston and Woodall, JJ., concur.
Lyons and Stuart, JJ., concur in the result.
Johnstone, J., concurs in part, dissents in part, and concurs in the judgment.
Moore, C.J., and Brown, J., dissent.