812 So.2d 1221 (2001)
In the Matter of ANONYMOUS, a minor.
2001070.
Court of Civil Appeals of Alabama.
July 27, 2001.
Opinion on Return to Remand August 3, 2001.
*1222 PER CURIAM.
On July 17, 2001, an unemancipated minor filed a petition pursuant to § 26-21-4, Ala.Code 1975, seeking a waiver of parental consent for an abortion. The trial court conducted a hearing. On July 20, 2001, the trial court entered an order denying the minor's petition for a waiver of parental consent. The minor appealed.
The record indicates that the minor is 17 years old. At the time of the hearing, she was six weeks pregnant. The minor is about to start her senior year in high school. She has a 3.0 grade-point average, and she is involved in her high-school band. The minor plans to attend college; she has been accepted at a college and is currently completing applications for financial aid. She is also saving her earnings from her weekend job to defray some of her college expenses.
The minor's grandmother is her legal guardian. The minor testified that she has lived with her grandmother since she was two or three years old. The minor testified that she sees her mother only once a week, and that she has not had any contact with her father since she was in the sixth grade.
The minor testified that her grandmother is religious and that she is opposed to abortion. She testified that the grandmother had told her that if she became pregnant while she was a teenager, the grandmother would "put [the minor] out" of the home. The minor testified that the grandmother had made the minor's aunt move out of the home when the aunt became pregnant at the age of 18.
The minor testified that she and the baby's father had considered and discussed their options for approximately two weeks before she sought the judicial bypass at issue in this appeal. The father is 18 years old and plans to attend college in the fall. He is not employed. The minor testified that she and the father both feel they are not ready for a child and that they are financially unable to care for a baby. The minor testified that she did not want to place the baby for adoption because she did not want others handling her responsibilities, and because she felt that placing the child for adoption would be more emotionally stressful to her than an abortion would be.
The minor has not sought her mother's advice because her mother is opposed to abortion. The minor testified that she had spoken with her 20-year-old sister, who is a college student. The minor said that her *1223 sister did not give her any advice other than to say that the minor should ensure that she (the minor) was "all right" with her decision.
The minor has also spoken with her godmother, a 37-year-old mother of two children. The minor testified that the godmother would accompany her to the clinic for the abortion procedure and that she would take care of her afterwards. The godmother testified at the hearing that the minor was mature and that the minor had thoroughly evaluated her options before deciding to seek a waiver of her grandmother's consent for an abortion.
The minor testified that she had spoken to a doctor and a counselor at the medical center where the abortion would be preformed. The minor was able to describe the abortion procedure, and she was informed about the risks involved. The minor testified that she had no health problems and that the doctor at the medical center had told her she could expect to experience no difficulties in undergoing the abortion procedure. The minor testified that she understood that free post-abortion counseling was available if she needed it after the procedure. The minor has discussed the psychological implications of abortion with a counselor at a mental health clinic. The minor testified that she has also read an article entitled "How Women Cope After Their Abortion: Implications for Pre-Abortion Counseling."
In denying the minor's petition, the trial court stated, in part:
"The court makes this decision after a review of Ex parte Anonymous, 808 So.2d 1025 (Ala.2001) and Ex parte Anonymous, 806 So.2d 1269 (Ala.2001). The court denies this Petition based on this court's review of the minor's composure, analytic ability, appearance, tone of voice, expressions, and overall demeanor. This court notes that the answers given by the minor appeared to be [given] in an almost rehearsed manner. There was not any expression of emotion from either the minor or the godmother [,who] also testified. In a review of [`How Women Cope After Their Abortion: Implications for Pre-Abortion Counseling'], there is not any evidence that the minor child actually reviewed the document and understood or considered the content of the same."
The Parental Consent Statute, § 26-21-1 et seq., Ala.Code 1975, provides that the requirement for a parent's consent to a minor's obtaining an abortion shall be waived where the trial court finds either:
"(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
"(2) That performance of the abortion would be in the best interest of the minor."
§ 26-21-4(f), Ala.Code 1975.
A trial court's order on a petition for a waiver of parental consent must contain written, specific factual findings and legal conclusions supporting the judgment. § 26-21-4(g), Ala.Code 1975. In Ex parte Anonymous, 808 So.2d 1025, 1028 (Ala. 2001) (citations omitted), our supreme court reversed this court's affirmance of the trial court's judgment after determining that the trial court had failed to make specific findings pursuant to § 26-21-4(f), Ala.Code 1975. The supreme court concluded that the trial court's judgment was "flawed" for its failure to include the specific findings required by § 26-21-4(f). 808 So.2d at 1027.
In this case, the trial court stated merely that it denied the minor's petition; its judgment is on the same form used by the trial court in Ex parte Anonymous, supra. Although it stated that the minor's testimony lacked credibility, the trial court did *1224 not find that the minor is not mature or sufficiently well-informed to make the abortion decision and that an abortion would not be in her best interests. See § 26-21-4(f)(1) and (2). Therefore, we reverse the judgment of the trial court and remand this case for the entry of a judgment in compliance with § 26-21-4(f) and Ex parte Anonymous, supra. Because time is of the essence, the trial court is directed to enter its judgment and make its return to this court by 4:00 p.m. on Monday, July 30, 2001.
REVERSED AND REMANDED.
All the judges concur.

ON RETURN TO REMAND
PER CURIAM.
This is the second time this matter has been before this court. In In re Anonymous, 812 So.2d 1221 (Ala.Civ.App.2001), this court set forth the relevant procedural history and facts.
"On July 17, 2001, an unemancipated minor filed a petition pursuant to § 26-21-4, Ala.Code 1975, seeking a waiver of parental consent for an abortion. The trial court conducted a hearing. On July 20, 2001, the trial court entered an order denying the minor's petition for a waiver of parental consent. The minor appealed.
"The record indicates that the minor is 17 years old. At the time of the hearing, she was six weeks pregnant. The minor is about to start her senior year in high school. She has a 3.0 grade-point average, and she is involved in her high-school band. The minor plans to attend college; she has been accepted at a college and is currently completing applications for financial aid. She is also saving her earnings from her weekend job to defray some of her college expenses.
"The minor's grandmother is her legal guardian. The minor testified that she has lived with her grandmother since she was two or three years old. The minor testified that she sees her mother only once a week, and that she has not had any contact with her father since she was in the sixth grade.
"The minor testified that her grandmother is religious and that she is opposed to abortion. She testified that the grandmother had told her that if she became pregnant while she was a teenager, the grandmother would `put [the minor] out' of the home. The minor testified that the grandmother had made the minor's aunt move out of the home when the aunt became pregnant at the age of 18.
"The minor testified that she and the baby's father had considered and discussed their options for approximately two weeks before she sought the judicial bypass at issue in this appeal. The father is 18 years old and plans to attend college in the fall. He is not employed. The minor testified that she and the father both feel they are not ready for a child and that they are financially unable to care for a baby. The minor testified that she did not want to place the baby for adoption because she did not want others handling her responsibilities, and because she felt that placing the child for adoption would be more emotionally stressful to her than an abortion would be.
"The minor has not sought her mother's advice because her mother is opposed to abortion. The minor testified that she had spoken with her 20-year-old sister, who is a college student. The minor said that her sister did not give her any advice other than to say that the *1225 minor should ensure that she (the minor) was `all right' with her decision.
"The minor has also spoken with her godmother, a 37-year-old mother of two children. The minor testified that the godmother would accompany her to the clinic for the abortion procedure and that she would take care of her afterwards. The godmother testified at the hearing that the minor was mature and that the minor had thoroughly evaluated her options before deciding to seek a waiver of her grandmother's consent for an abortion.
"The minor testified that she had spoken to a doctor and a counselor at the medical center where the abortion would be preformed. The minor was able to describe the abortion procedure, and she was informed about the risks involved. The minor testified that she had no health problems and that the doctor at the medical center had told her she could expect to experience no difficulties in undergoing the abortion procedure. The minor testified that she understood that free post-abortion counseling was available if she needed it after the procedure. The minor has discussed the psychological implications of abortion with a counselor at a mental health clinic. The minor testified that she has also read an article entitled `How Women Cope After Their Abortion: Implications for Pre-Abortion Counseling.'
"In denying the minor's petition, the trial court stated, in part:
"`The court makes this decision after a review of Ex parte Anonymous, 808 So.2d 1025 (Ala.2001), and Ex parte Anonymous, 806 So.2d 1269 (Ala.2001). The court denies this Petition based on this court's review of the minor's composure, analytic ability, appearance, tone of voice, expressions, and overall demeanor. This court notes that the answers given by the minor appeared to be [given] in an almost rehearsed manner. There was not any expression of emotion from either the minor or the godmother[, who] also testified. In a review of ["How Women Cope After Their Abortion: Implications for Pre-Abortion Counseling"], there is not any evidence that the minor child actually reviewed the document and understood or considered the content of the same.'
"The Parental Consent Statute, § 26-21-1 et seq., Ala.Code 1975, provides that the requirement for a parent's consent to a minor's obtaining an abortion shall be waived where the trial court finds either:
"`(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or
"`(2) That performance of the abortion would be in the best interest of the minor.'
"§ 26-21-4(f), Ala.Code 1975.
"A trial court's order on a petition for a waiver of parental consent must contain written, specific factual findings and legal conclusions supporting the judgment. § 26-21-4(g), Ala.Code 1975. In Ex parte Anonymous, 808 So.2d 1025, 1028 (Ala.2001) (citations omitted), our supreme court reversed this court's affirmance of the trial court's judgment after determining that the trial court had failed to make specific findings pursuant to § 26-21-4(f), Ala.Code 1975. The supreme court concluded that the trial court's judgment was `flawed' for its failure to include the specific findings required by § 26-21-4(f). 808 So.2d at 1027.
"In this case, the trial court stated merely that it denied the minor's petition; its judgment is on the same form *1226 used by the trial court in Ex parte Anonymous, supra. Although it stated that the minor's testimony lacked credibility, the trial court did not find that the minor is not mature or sufficiently well-informed to make the abortion decision and that an abortion would not be in her best interests. See § 26-21-4(f)(1) and (2). Therefore, we reverse the judgment of the trial court and remand this case for the entry of a judgment in compliance with § 26-21-4(f) and Ex parte Anonymous, supra. Because time is of the essence, the trial court is directed to enter its judgment and make its return to this court by 4:00 p.m. on Monday, July 30, 2001."
(Emphasis added.)
On remand, the trial court issued an amended order containing the specific factual findings required by § 26-21-4(f), Ala. Code 1975, and Ex parte Anonymous, 808 So.2d 1025 (Ala.2001). In its amended order, the trial court determined that the minor "was not mature and well-informed enough to make the abortion decision on her own and that performance of the abortion would not be in the best interest of the minor." The trial court also reiterated that it found the testimony of the minor and the godmother to lack credibility. The court stated:
"This court makes this conclusion [that the minor was not mature and well-informed enough to make the abortion decision], not from the plain words used by the minor and/or the documents presented alone; this court makes this decision from inferences from the minor's composure, analytic ability, appearance, thoughtfulness, tone of voice, expressions, and her ability to articulate her reasons and conclusions."
In Ex parte Anonymous, 803 So.2d 542 (Ala.2001), our supreme court overruled earlier precedent and held that, in appeals from the denial of a minor's petition for a waiver of parental consent for an abortion, the ore tenus rule applies to the trial court's findings regarding the maturity of the minor and her degree of knowledge about the abortion procedure. In Ex parte Anonymous, 806 So.2d 1269 (Ala. 2001), our supreme court reaffirmed that holding; it "noted that the trial court's findings concerning the minor's demeanor... were due the presumption of correctness afforded by the ore tenus rule." Ex parte Anonymous, 810 So.2d 786, 790 (Ala. 2001).
Our supreme court recently reversed this court's judgment affirming a trial court's denial of a petition for a waiver of parental consent to have an abortion and rendered a judgment for the minor, granting a waiver of consent. See Ex parte Anonymous, 810 So.2d 786. In that case, in addition to appointing an attorney to represent the minor, the trial judge had also appointed an attorney to represent the interests of the minor's unborn child. The attorney representing the unborn child thoroughly cross-examined the minor. The trial judge entered a detailed order stating its reasons for denying the minor's petition. In rendering a judgment for the minor, our supreme court found that the minor had presented clear testimony on a number of factors that the appellate courts of this state have held to support an inference that a minor is sufficiently mature to make the abortion decision on her own. The supreme court also found that "the clear import" of the trial court's judgment denying the waiver indicated that the trial court had found the minor's testimony in that case to be credible, and that it had made no factual findings to the contrary. "Indeed, by virtue of its detailed explanation of all the factors and considerations it relied upon in making its determination that [the minor] was not *1227 sufficiently mature, we may readily infer that [the trial court] did not base that finding to any degree on her demeanor." Ex parte Anonymous, 810 So.2d at 790. Thus, our supreme court could find no "identifiable basis for [the trial court's] disregarding" the minor's testimony and denying her petition for a waiver of parental consent for an abortion. Id. at 793.
In this case, the minor and her godmother were the only witnesses; they were subject only to direct examination by the attorney appointed to represent the minor. "[W]here the trial court bases its finding in part on its assessment of the petitioner's demeanor in a proceeding where the minor is not subject to cross-examination, this Court now affords those findings `considerable deference.'" Ex parte Anonymous, 810 So.2d at 790-91 (citing Ex parte Anonymous, 803 So.2d 542 (Ala.2001)).
The trial court concluded that the minor was not sufficiently mature and well-informed enough to make the abortion decision. In its original order and its amended order, the trial court made factual findings as to the reasons for that conclusion. Those reasons included, among her other things, the minor's testimony, expressions, composure, and her overall demeanor. Thus, the trial court specifically identified the basis for disregarding much of the substance of the minor's testimony. See Ex parte Anonymous, 810 So.2d at 793. The trial court was in the best position to evaluate the testimony presented, the minor's credibility and demeanor, her maturity, and the extent of her knowledge regarding the abortion procedure. "That aspect of the evidence is denied an appellate court by a cold record. The trial judge [is] in a far better position than are we to determine, as a matter of fact, the minor's maturity and level of her knowledge." Ex parte Anonymous, 803 So.2d 542, 546 (Ala. 2001). Given the specific findings of fact in the trial court's judgment, together with the "considerable deference" afforded those findings, we cannot say that the trial court abused its discretion in denying the minor's petition for a waiver of the consent of her legal guardian. See Ex parte Anonymous, 803 So.2d 542.
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.
YATES, P.J., dissents.
MURDOCK, Judge, concurring in the result.
I concur in the result reached by the majority.
I write separately to note that my opinion in this case is not dependent upon the fact that no one cross-examined the petitioner. I do not believe, and I do not believe that our precedents hold, that the applicability of the ore tenus rule turns on whether or not a testifying party is subject to cross-examination.
The applicability of the ore tenus rule turns on whether evidence as to disputed facts is the subject of oral testimony.[1] The ore tenus rule has thus been stated as follows: "The decision of a trial judge, sitting without a jury, upon disputed facts presented orally, will be affirmed on appeal `if it is fairly supported by credible evidence under any reasonable aspect, and is not palpably wrong or manifestly unjust.'" *1228 Charles Israel Chevrolet, Inc. v. Walter E. Heller & Co., 476 So.2d 71, 73 (Ala.1985) (emphasis added; quoting Whitt v. McConnell, 360 So.2d 336, 337 (Ala. 1978)). "Because the trial judge [occupies] the superior position of seeing the demeanor of witnesses with direct personal knowledge of the ultimate facts of the case, he [is] in the best position to determine the weight and credibility to be given the testimony of each witness." Charles Israel Chevrolet, Inc., 476 So.2d at 74 (emphasis added).
Recently, our Supreme Court reaffirmed these principles in a judicial-bypass case:
"The ore tenus rule provides that a trial court's findings of fact based on oral testimony `have the effect of a jury's verdict,'.... `The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986)."
Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001) ("Anonymous I"). "As a corollary," explained the Supreme Court, "the ore tenus rule has no application where the facts are indisputably established and the only question is whether the trial court correctly applied the law to those undisputed facts." Id. at 546 (citing Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999) (involving factual submission to a trial judge entirely upon written materials and "not on any live testimony" (emphasis in original)).
The Supreme Court then addressed the rule embodied in previous judicial-bypass cases that essentially "compell[ed] acceptance of undisputed live testimony as truewithout affording any deference to the trial court's ability to observe and assess the demeanor of the witness" because "no adverse party cross-examines [the petitioner] or otherwise challenges her testimony." It found that rule "unsound" and concluded that, to the contrary, in judicial-bypass cases, "the trial court's findings should be afforded considerable deference." Anonymous I, 803 So.2d at 546. In so doing, the Anonymous I court recognized the difference between testimony and facts, and reasoned that the absence of a cross-examiner or of conflicting testimony does not make everything testified to by a minor petitioner an undisputed fact. The minor's testimony is given orally. The trial court is specifically charged under the statute with the task of assessing the minor's maturity. Ala.Code 1975, § 26-21-4(f) & (g). Moreover, the trial court must make determinations with respect to the petitioner's credibility as to all matters to which she testifies, and is in a better position to do this with respect to oral testimony than is an appellate court.
Thus, in Anonymous I, our Supreme Court held that the absence of an adversarial party in a parental-consent hearing does not mean that the substance of a minor petitioner's testimony becomes "undisputed fact" for purposes of exempting it from the ore tenus rule. I do not read Anonymous I, however, as suggesting that the converse is true, i.e., that if a court appoints a guardian ad litem, for example, but the petitioner does not contradict her own testimony in the face of cross-examination, her testimony is thereby considered "undisputed fact" exempt from the same credibility and weight determinations that courts make on a daily basis in conventional cases. Such a rule would yield the anomalous result of a court having more freedom to assess the character and credibility of a witness in a case in which the petitioner has been "unsuccessfully" cross-examined than in a case in which there has been no cross-examination at all. Yet, it is equally clear in both cases (if not *1229 more so in the former) that the cross-examiner has not conceded the factual proposition at issue, and that any question as to the credibility of, and weight to be given to, the oral testimony at issue must be decided by the trial court and given deference by an appellate court. See Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538, 543-44 (Ala.1988) (upholding trial court's findings of fact differing from facts testified to by the only witness addressing the issue "based on the trial court's apparent reservation about the credibility of [the witness's] testimony, as well as the inference of inconsistent assertions arising therefrom"; citing Hall v. Mazzone, 486 So.2d 408 (Ala.1986)). See also Sevigny v. New South Fed. Sav. & Loan, 586 So.2d 884, 886 (Ala.1991); Bownes v. Winston County, 481 So.2d 362, 364 (Ala.1985).
"The ore tenus rule provides that `[a] judgment grounded on [findings of fact based on oral testimony], is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.'" Anonymous I, 803 So.2d at 546 (citation omitted). From my review of the record and the findings expressed by the trial court in its judgment, I cannot conclude that those findings are "plainly erroneous or manifestly unjust." Accordingly, I must concur in the result reached in the majority opinion.
YATES, Presiding Judge, dissenting.
The trial court abused its discretion in denying the minor's petition for a waiver of parental consent to abortion and the judgment in this case is plainly erroneous and manifestly unjust. Therefore, I dissent.
The record before us reveals the following. The minor is a high school senior and will be 18 in less than 3 months. She has worked at the same part-time job for the last year and a half. She paid for tutoring to enhance her chances of passing the high school exit exam. She has already obtained a college scholarship and she is planning on using her savings from her job to help pay for her education. She has good grades and is a member of the high school band.
When the minor was two or three years old, her mother left her. The minor has lived with her grandmother since that time; the grandmother has legal custody of the minor. The father's whereabouts are unknown. The mother now lives in the same city as the minor. The minor testified that she sees her mother once a week; that they do not have a good relationship; and that she has heard her mother say that she does not "believe in" abortion. The minor testified that her grandmother does not "believe in" abortion and would "put her out if she knew [the minor] was pregnant." In fact, the grandmother had forced her own daughter, the minor's aunt, to leave home when she found out that the aunt, who was then 18 and in high school, was pregnant. After forcing the aunt out, the grandmother did not assist the aunt in any way.
When the minor discovered that she was pregnant, she discussed the pregnancy with her 18-year-old boyfriend, who is entering trade school and is currently unemployed. They discussed the pregnancy with his mother, who agreed that the couple could not take care of a child and said that she could not provide any assistance in caring for a baby. The minor sought the advice of her 20-year-old sister. Over a two- to three-week period, the minor and her boyfriend discussed available options. After the decision to abort was made, the minor went to her godmother for help; an abortion clinic was contacted and the judicial bypass procedure was explained.
*1230 The minor spoke about abortion and the psychological implications of abortion with a counselor at a health care center. The counselor had had an abortion and shared her experience with the minor. She offered the minor the opportunity to have follow-up counseling after the abortion procedure.
The minor spoke with a counselor and a doctor at the clinic where the abortion would be performed. They discussed the possible psychological risks involved. The minor testified that she was given a pamphlet entitled "How Women Cope After Their Abortion" (introduced at the hearing as "Exhibit # 1"), and that she had read it. She testified that there are two types of possible emotional problems after an abortion post-abortion trauma syndrome, which usually involves feelings of guilt, stress, and regret, and post-abortion psychosis. She stated that psychosis is usually experienced by women who have had mental health problems before the abortion. The minor testified that she understood that either condition was rare. She stated that neither she nor others in her family had had any type of mental health problem.
The minor provided the court with a letter (introduced at the hearing as "Exhibit # 2") from the administrator of the abortion clinic, which stated that the minor had discussed with the clinic's medical director the abortion procedure and its risks. The letter further stated:
"[The minor] is familiar with the possibility of psychological after effects, what symptoms to look for following the procedure which might indicate complications, and our availability to deal with complications or questions. She understands aftercare requirements and the necessity of a follow-up visit. She has been told that counseling is available, should she need it."
The minor testified about the abortion procedure: "[The doctor] does a pelvic examination to see where the uterus is located and the size. Then he inserts a speculum to open you up and look at the cervix. He injects lidocaine into the cervix to numb it. Then he uses a vacuum aspiration to remove the embryo." She said the doctor told her that the procedure lasts 5 to 15 minutes. He also told her that, based upon her medical history, she should not experience any problems. The minor stated she was aware of the physical risks of abortion such as heavy bleeding, infection, and death. She said that she understood that she would be prescribed medication to prevent any infection and to manage any heavy bleeding. The minor testified that her godmother would accompany her to the clinic and that she planned to stay at her godmother's house for a few days after the procedure.
The minor stated that she decided to ask the court for a judicial bypass instead of talking to her mother or grandmother "[b]ecause I know that they don't believe in abortions. I would rather handle my own responsibilities than be on the street. And I don't have anywhere else to go."
The minor's godmother is 37 years old, married, and has two children. She was present at the hearing and testified that she has known the minor for 10 years. The godmother testified that the minor "is very mature and knows what she wants to do in life." She described the minor as a "good worker." She said, "Her grades are good. She hasn't been in any trouble. She goes to school. She gets there on time. She's a good girl." The godmother testified that the minor "has a good reputation"; that she "has her head on straight"; that "she's always where she's supposed to be on time"; that "she works hard"; and that she saves and budgets her money. The godmother stated that she *1231 has had the opportunity to see the minor in the grandmother's home and at her own home several times a week. The godmother testified that she has heard the grandmother state she would put the minor out of her home if she became pregnant, and believes that she would. The godmother confirmed the minor's assertion that she would have no family support if her pregnancy was revealed to her mother or grandmother.
The trial court denied the petition; the minor appealed. On appeal, this court remanded the case for the trial court to make specific factual findings required by § 26-21-4(f), Ala.Code 1975. On remand, the trial court determined that the minor was not mature and well-informed enough to make the abortion decision on her own and that the abortion would not be in her best interest, giving no weight to the abundant evidence to the contrary.
The court stated that "the minor's testimony was not believable and/or credible" and that it "questioned the credibility of the minor's godmother in her testimony," because "the testimony of the minor and the godmother appeared to be rehearsed and ... neither of the two individuals showed any emotion concerning the very serious request that they were making in this proceeding." The trial court faults the minor and her godmother for failing to show emotion. Nowhere in § 26-21-4(f) is there such a requirement, nor does the United States Supreme Court require tears or remorse to reflect the seriousness of the proceeding. As to what emotion this particular trial judge would deem appropriate during such a proceeding, one can only guess. If the minor had cried, he might just have easily deemed that an indication that she was unsure of whether she wanted an abortion. Nothing in the record indicates that the minor or her godmother were taking the proceedings lightly.
The court went on to state that it did not believe the minor had read or considered the pamphlet "How Women Cope ..." because "[the pamphlet] notes that individuals who may have been emotionally abused as a child react differently to an abortion and require more assistance in coping." The minor testified that she had read the information and she described the particular emotional problems that could arise after an abortion. Further, there is no evidence that the minor had been "emotionally abused."
The court then stated: "This court questions if the guardian would `kick the minor child out of her home if she were told of the pregnancy.' This court further is aware that if this child is kicked out of her home, the godmother could file the appropriate Petition for Custody and give the minor permission, if she wishes, for the abortion." The trial court's suggestion that the godmother could petition the court for custody if the grandmother throws the minor out of the home, and then give the minor permission to have the abortion, is ridiculous and shows a complete abrogation of the trial court's duty to apply the law.
The trial court then parrots criteria regarding the demeanor of the minor, as set forth in our supreme court's overruling of long established precedent regarding application of the ore tenus rule in these type cases. See Ex parte Anonymous, 803 So.2d 542 (Ala.2001) ("Ex parte Anonymous I"). However, the trial court is not allowed carte blanche to disregard the statutory mandate of § 26-21-4(f).
"[T]he heightened deference given by this Court to a trial court's findings of fact by the application of the ore tenus rule does not amount to a conclusive presumption that the trial court's findings *1232 are correct. The new application of the ore tenus rule in Ex parte Anonymous I did not change the long-settled rule that a judgment based on findings of fact that are `plainly erroneous or manifestly unjust' must be reversed. Ex parte Anonymous I, 803 So.2d at 546, quoting Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984). See also Ex parte Anonymous II, 806 So.2d 1269 (Ala.2001) and Hall v. Mazzone, 486 So.2d 408 (Ala.1986).
"We also consider the trial court's findings in a waiver-of-parental-consent case in light of the following statutory mandate, often quoted by this Court:
"`The requirement of parental consent shall be waived if the trial court hearing the minor's petition finds either:

"`"(1) That the minor is mature and well-informed enough to make the abortion decision on her own; or

"`"(2) That performance of the abortion would be in the best interest of the minor.'"

"Ex parte Anonymous I, supra, 803 So.2d at 544 (quoting Ala.Code 1975, § 26-21-4(f)) (emphasis added). The Legislature has declared that a minor has a right to obtain an abortion without her parent's consent, unless the trial court makes particular findings to the effect that she is unable to make such a decision on her own. See Ex parte Anonymous, 664 So.2d 882 (Ala.1995), and In re Anonymous, 782 So.2d 791 (Ala.Civ.App.2000). This Court is bound to follow the statutory mandate, regardless of any personal convictions that might lead an individual Justice to some other result, and regardless of any personal disagreement with the controlling federal constitutional principles set out by the United States Supreme Court in Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Ex parte Anonymous, 664 So.2d 882 (Ala.1995); Ex parte Anonymous, 618 So.2d 722 (Ala. 1993)."
Ex parte Anonymous, 810 So.2d 786, 791 (Ala.2001) ("Ex parte Anonymous III").
The trial court's findings are based on something other than reasonable inferences drawn from the evidence.
In Ex parte Anonymous III, the supreme court stated:
"This Court and the Court of Civil Appeals have also had occasion to consider what evidence shows sufficient maturity to satisfy the criteria of Ala.Code 1975, § 26-21-1, et seq., and thereby to require the grant of a waiver. For example, the Court of Civil Appeals has held that evidence that the minor had discussed her pregnancy with the father, educated herself about the procedures and consequences of abortion, determined that she was not emotionally prepared to be a parent, and expressed a desire to complete high school and college before having children is evidence that `overwhelmingly supports the issuance of the waiver of parental consent.' In re Anonymous, 718 So.2d 64 (Ala.Civ. App.1998). See also Ex parte Anonymous, 664 So.2d 882 (Ala.1995). In In re Anonymous, 770 So.2d 1107 (Ala.Civ. App.2000), the Court of Civil Appeals held that evidence that the minor was well-informed about the medical procedures and had obtained information from counseling centers was sufficient to demonstrate the requisite maturity to warrant granting a waiver of parental consent. In Ex parte Anonymous, 664 So.2d 882, supra, this Court also held that evidence that the minor petitioner sought the advice of legal counsel and invoked the judicial process to obtain a *1233 waiver of consent was evidence of maturity that supported a finding that the minor was sufficiently mature to make her own decision concerning obtaining an abortion. See also Ex parte Anonymous, 595 So.2d 497 (Ala.1992); In re Anonymous, 711 So.2d 475 (Ala.Civ.App. 1998); In re Anonymous, 650 So.2d 919 (Ala.Civ.App.1994)."
810 So.2d at 794. The trial court in Ex parte Anonymous III found the minor to be immature and not well-informed and that an abortion would not be in her best interest, but made no mention of the minor's demeanor. The trial court in the instant case discussed the minor's demeanor, while admitting that the minor's testimony showed maturity and that she was well-informed about the abortion procedure. In other words, the trial court determined that the minor said all the right words but could not be believed. However, those specific instances where the trial court determined that the minor could not be believed are not reasonable inferences. The trial court's findings must be considered in light of the statutory mandate of § 26-21-4.
The minor testified that she sought the advice of her boyfriend, his mother, her godmother, her adult sister, a counselor at a health care facility, a counselor at an abortion clinic, and the doctor who would be performing the abortion.
There is no evidence to support the trial court's finding that the minor is not mature and well-informed enough to make the abortion decision on her own or that it is not in her best interests. "There being no evidence supporting a finding that the abortion is not in the minor's best interest and overwhelming evidence that it is, the trial court erred in denying the waiver of consent." Ex parte Anonymous, 531 So.2d 901, 907 (Ala.1988). There, our supreme court cited Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), in which the United States Supreme Court indicated that some considerations relevant to a finding that an abortion is not in a minor's best interest will vary widely, but may include alternatives to abortion such as marriage to the father, adoption, or assuming the responsibilities of motherhood with the assured support of family. Our supreme court, citing Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), also noted that health of the minor may be indicative of whether an abortion is in the minor's best interest. Ex parte Anonymous, 531 So.2d 901. None of these factors was shown to exist in the present case.
The main opinion states: "In this case, the minor and her godmother were the only witnesses; they were subject only to the direct examination by the attorney appointed to represent the minor." Would we now require numerous witnesses to testify in these type cases? The judge, although he did not believe the minor or her witness, asked no questions of them during the entire proceeding. Is the minor to be penalized by this court because she was not subjected, as was the minor in Ex parte Anonymous III, to an over-zealous cross-examination? It appears that the fear expressed in my special writing in this court's memorandum affirmance in Matter of Anonymous, 806 So.2d 1267, 1268 (Ala.Civ.App.2001), that "Ex parte Anonymous [I] will result in this court's merely giving a stamp of approval to any one trial judge's view on this very difficult issue" has materialized. The record is replete with overwhelming evidence that the minor is mature and well-informed, and that an abortion would be in her best interest. She has complied with every legal requirement and beyond. Although there is no statutory requirement that she do so, she has spoken directly with the *1234 physician who would perform the abortion and she presented a witness to testify on her behalf at the hearing. The legislature of this state, by passage of the judicial waiver statute, has provided a minor an alternative when, for whatever reason, parental consent is not available to her. The statute continues to be extended by our judiciary, placing an undue burden on a minor's constitutional rights and rights conferred by § 26-21-4. Therefore, I dissent.
NOTES
[1] Translated literally, ore tenus means "by word of mouth." Blacks Law Dictionary 1126 (7th ed.1999).