The trial court was called upon to decide whether, consistent with the requirements of Alabama's judicial-bypass statute, Ala. Code 1975, § 26-21-1 et seq., the minor should be allowed to have an abortion without first consulting with her parents and obtaining their consent. The trial court reached the conclusion that she should not.
Two questions are presented in cases such as this: (1) Is there sufficient evidence in the record that we may conclude that the trial court did not err to reversal in its factual findings? (2) Did the trial court apply the law correctly to its findings? Both of those questions must be asked in regard to each of the two prongs of inquiry prescribed in § 26-21-4(f), Ala. Code 1975. Based on my review of the trial court's judgment, I must answer the aforesaid questions, particularly the latter question, in the negative insofar as they relate to the issue of the minor's maturity. I would pretermit consideration of the other issues presented in this appeal.[2]
Unlike the trial-court orders in other recent judicial-bypass cases considered by this court, the trial court's order in the present case indicates that the trial court's conclusion as to the minor's lack of maturity was based not on the court's observations of the minor, or her demeanor, but rather upon a series of objective factors that the trial court clearly articulates in its order, and which this court is required to measure against the written record before us and against applicable law. Compare, e.g., In re Anonymous, 803 So.2d 529,535-38 (Ala.Civ.App. 2001) (Murdock, J., concurring specially);Ex parte Anonymous, 806 So.2d 1269 (Ala. 2001); and Ex parteAnonymous, 810 So.2d 786 (Ala. 2001) (plurality opinion). In laying a predicate for the first of several of these objective factors enumerated by the trial court in its order, the court posits that the minor could obtain sufficient financial aid to enable her to attend college, even if she was unable to earn an athletic scholarship. I find no evidence of this in the record. The *Page 852 
trial court then continues by stating that, if the minor is talented enough to earn an athletic scholarship at the present time, "she undoubtedly could do so after having had a child" and missing her senior season (or part of it) due to her pregnancy. I find no testimony or other evidence in the record to support the proposition that the amount of financial aid the minor might receive from an athletic scholarship would not be materially affected by the minor missing her senior season (or part of it) due to a pregnancy.
Even assuming for the sake of this discussion that the former proposition might be sustained on the basis of the doctrine of judicial notice, the foregoing propositions are included in the trial court's order as the predicate for the trial court's conclusion that the minor had "not thought through [these] options in the manner that a mature minor would do" and that therefore the minor was not sufficiently mature within the meaning of the statute. Regardless of the presence or absence of evidence as to the aforementioned propositions, the record before us contains no testimony as to whether the minor had or had not thought through the alternative financial aid/scholarship options to which the court is referring.
The second enumerated reason for the trial court's decision that the minor lacked sufficient maturity within the meaning of the statute was that, despite the risk of serious consequences in the event she became pregnant, the minor engaged in a sexual relationship. The court concluded that this was evidence indicating that the minor was not sufficiently mature to seek and obtain relief under the statute. However, a pregnancy, by its very nature, will be a life-altering experience. Being pregnant and giving birth to a child will impact a mother's educational and/or career plans, even if only temporarily, in virtually every case. Our Legislature clearly contemplated that this would be the case when it enacted the statute at issue in reaction to the United States Supreme Court's decision in Bellotti v. Baird,443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), requiring that states afford minor females a mechanism through which they may obtain an abortion without the consent of their parents. As a judge, regardless of my personal view as to the wisdom or soundness of a statute generally, or the specific manner in which the statute is "constructed," the fact that our Legislature has chosen to adopt the statute as our law means that I am bound by my oath of office to apply that statute, except to the extent that it may be unconstitutional. Likewise, I am bound by the precedent of our Supreme Court. With respect to both of these strictures, I note that our Supreme Court has held that the judicial-bypass statute may not be applied in a way that would "run afoul of the basic rule of statutory construction that the courts must interpret and apply statutes so as to give them effect." Ex parte Anonymous, 810 So.2d at 793. Because it will virtually always be the case that a pregnancy will have a significant life-altering impact on a minor, the trial court's stated rationale would leave the statute with essentially no field of operation.
The trial court also states in its order that "[t]his is a capital case." Further, the court asks rhetorically whether it is "an act of maturity on [the minor's] part to put the burden of the death of this child upon the conscience of the court?" The Legislature has prescribed a statutory scheme that treats judicial-bypass cases as other than capital cases, however. Moreover, use of the foregoing rhetorical question as a rule of decision in every case would deprive the statute of any field of operation. *Page 853 
As I am sure is true of the esteemed trial judge, and of the other judges of this court, I have not reached my decision in this case lightly. As noted, however, if I am to fulfill my oath as a judge, I have no alternative but to apply, to the extent they are constitutional, the legal standards prescribed by the legislative branch of government. For this reason, and because I am bound by the previous decisions of our Supreme Court as well, I am required to concur in the result reached by the main opinion. See Ex parte Anonymous, 810 So.2d 786.
[2] I do not join in the main opinion's discussion or characterization of a number of matters not dealt with in this writing.