STOWERS, Justice,
dissenting.
I dissent from today's opinion because it unjustifiably departs from our earlier approval of parental notification in Planned Parenthood II,[1] misapplies our equal protection case law by comparing two groups that are not similarly situated, and fails to consider how other states have handled similar questions related to parental notification laws. I also disagree with the concurring ° opinion that the Parental Notification Law violates the Alaska Constitution's Privacy Clause. But, for argument's sake, even if it does, I believe that any privacy concerns *1155 could be resolved by severing certain provisions of the Parental Notification Law.
Moreover the majority and concurrence ignore in practical effect the interests and rights of the State and parents in taking steps to assist a minor who is seeking an abortion in receiving information and counseling concerning all aspects of that decision. The United States Supreme Court has clearly explained that the State has a legitimate right to enact laws designed to encourage a woman contemplating abortion to be informed* regarding the effects that abortion may have on her and regarding alternatives to abortion. In Planned Parenthood v. Casey, Justice Sandra Day O'Connor wrote for the Court and stated: Les. ,
[IIt must be remembered that Roe v. Wade speaks with clarity in establishing not only the woman's liberty but also the State's "important and legitimate interest in potential life," That portion of the decision in Roe has been given too little acknowledgment and implementation by the Court in its subsequent cases, Those cases decided that any regulation touching upon the abortion decision must survive strict seru-tiny, to be sustained only if drawn in narrow terms to further a compelling state interest. Not all of the cases'decided under that formulation can be reconciled with the holding in Roe itself that the State has legitimate interests in the health of the woman and in protecting the potential life within her.
[[Image here]]
Though the woman has a right to choose to terminate or continue her pregnancy before viability, it does not at all follow that the State is prohibited from taking ° steps to ensure that this choice is thoughtful and informed. Even in the. earliest stages of pregnancy, the State may enact rules and regulations designed to encourage her to know that there are philosophic and social arguments of great weight that ean be brought to bear in favor of continuing the pregnancy to full term and that there are procedures and institutions to allow adoption of unwanted children as well as a certain degree of state assistance if the mother chooses to raise the child herself,[2]
In the case before us,, the Alaska Legislature enacted a law after Alaska citizens passed the Parental Notification Act initiative[3] requiring that parents be notified ' if their minor daughter is seeklng an abortlon, with exceptions discussed below. One obvious purpose of this law is to provide the minor's parents the opportumty to discuss with their daughter the potential effects of and alternatives to abortion. This is beyond doubt a legitimate interest and right that the State and the parents possess. Contrary to the Supreme Court's clear statement in this regard, the Alaska Court today trivializes and makes this right of no effect,"
I,. INTRODUCTION
[TThe right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions. This right is one of the most basic of all civil liberties.[4]
This appeal raises questions about the Parental Notification Law through the lens of minors' equal protection and privacy rights, but it also raises questions about parents' fundamental rights to be informed that their minor daughter is seeking an abortion and parents' rights to discuss this potentially life-changing decision with their daughter before *1156 she undergoes this procedure.[5] In 1997 the Alaska Legislature enacted a law that provided that minors could not obtain abortions without their parents' consent, subject to certain exceptions.[6] Planned Parenthood challenged this Alaska Parental Consent Act, arguing that it violated the minorg' rights to privacy and equal protection.[7] In a 3-2 decision, the Alaska Supreme Court agreed with Planned Parenthood that the Parental Consent Act violated the minors' rights to privacy and decided that it did not need to reach the equal protection challenge.[8] But notably, the court majority gave its repeated, unambiguous blessing to a law upholding parents' rights to be notified that their minor daughter is seeking an abortion: We decide today that the State has an undeniably compelling interest in protecting the health of minors and in fostering family involvement in a minor's decisions regarding her pregnancy.... [Wle determine that the constitution permits a statutory scheme which ensures that parents are notified so that they can be engaged in their daughters' important decisions in these matters.!"
We decide today that the State has an undeniably compelling interest in protecting the health of minors and in fostering family involvement in a minor's decisions regarding her pregnancy.... [Wle determine that the constitution permits a statutory scheme which ensures that parents are notified so that they can be engaged in their daughters' important decisions in these matters.[9]
The court explained its rationale why a parental notification statute, as opposed to a parental consent statute, is constitutionally permissible:
There exists a less burdensome and widely used means of actively involving parents in their minor children's abortion decisions: parental notification. The United States Supreme Court has recognized, in a different context, that "notice statutes are not equivalent to consent statutes because they do not give anyone a veto power over a minor's abortion decision." And many states currently employ this less restrictive approach. Because the State has failed to establish that the greater intrusiveness of a statutory scheme that requires parental consent, rather than parental notification, is necessary to achieve its compelling interests, the Parental Consent Act does not represent the least restrictive means of achieving the State's interests and therefore cannot be sustained,[10]
The court concluded by again lauding the benefits of a parental notification statute in language that, given today's decision, can only be regarded as ironic:
These expressed legislative goals-increased parental communication, involvement, and protection-are no less likely to accompany parental notification than the parental "veto power" [over a minor's decision to have an abortion].
[[Image here]]
Notification statutes protect minors by enhancing the potential for parental consultation concerning a [minor's] decision. In fact, to the extent that parents who do not have a "veto power" over their minor children's abortion decision have a greater incentive to engage in a constructive and ongoing conversation with their minor children about the important medical, philosophical, and moral issues surrounding *1157 abortion, a notification requirement may actually better serve the State's compelling interests.[11]
In reasonable reliance on the court's approval of parents' rights to be notified of their daughters' intent to have an abortion, the Alaska Legislature enacted the Parental Notification Law in accordance with a voter initiative passed by Alaska citizens.[12] Planned Parenthood again challenged this law, arguing that it violated the minors' rights to privacy and equal protection. The superior court, mindful of the supreme court's unqualified approval of a law recognizing parents' rights to be notified that their minor daughter is seeking an abortion, held that the Parental Notification Law did not violate mi-norg' rights to equal protection. Superior Court Judge John Suddock cogently explained:
It is hard to fathom the Alaska Supreme Court overturning the [Parental Notification Law] on equal protection grounds notwithstanding Planned Parenthood II's privacy-clause affirmance. ... When a minor decides to opt out of pregnancy, she is no longer similarly situated with other pregnant minors with respect to the familial consultation issue. Accordingly, this court holds that the [Parental Notification Law] does not violate Alaska's equal protection clause.
But today a majority of the supreme court inexplicably walks back on its broad pronouncements in Planned Parenthood Iland holds that the Parental Notification Law unconstitutionally violates pregnant minors' rights to equal protection. The majority does so by the expedient of finding that pregnant minors who seek abortions are similarly situated to minors who wish to carry their pregnancies to term-an untenable conclusion. The determination that two groups are similarly situated is a finding of fact,[13] subject to reversal by an appellate court only if the trial court that made that factual finding clearly erred.[14]
*1158 In this case the superior. court found, reasonably, that minors who seek abortions are mot. similarly situated to minors who want to carry their pregnancies to term. This determination, with which the concurrence agrees, is self-evident. What similarity can there be between a decision to terminate life and a decision to preserve life? Yet the majority concludes, erroneously and in sweeping language, that "vindicating the State's compelling interest in encouraging parental involvement in minors' pregnancy-related decisions does not sﬁpport the Notification Law's disparate treatment of the two [similar] classes of pregnant minors," that is to say, minors who wish to abort their pregnancies and minors who wish to carry their pregnancies to term.
This court has previously proclaimed that "it is the right and duty, privilege and burden, of all parents to involve themselves in their children's lives; to provide their children with emotional, physical, and material support; and to instill in their children 'moral standards, religious beliefs, and elements of good citizenship)"[15] The Parental Notification Law focuses on the State's interest in "aiding parents in fulfilling their parental responsibilities" [16] by upholding the parents' rights to be notified of a significant medical decision involving their minor daughter, and to at least have the opportunity to counsel their child regarding this important decision and its lasting consequences. The court's decision today totally undermines the parents' rights and responsibilities in this regard and makes a mockery of its earlier proclamations of the proper and fundamental role parents have traditionally played in their children's lives.
Under its ruling today, no parental notification law recognizing parents' fundamental legal rights to notification of, much less meaningful involvement in, their minor daughters' decisions to have abortions will be upheld by this court under its strained jurisprudence defining minors' rights to equal protection. And notwithstanding its broad approval in Planned Parenthood II of a parental notification law being an acceptable lesser restrictive alternative to a parental consent law, the concurrence's opinion today that the Parental Notification Law violates a minor's right to privacy suggests that this court will always find a lesser restrictive alternative that will defeat the legislature's effort to craft a constitutional parental notification law.
I cannot see how the court can reach these results under our standard of review for constitutional questions: "adopting the most persuasive rule of law in light of precedent, reason, and policy." [17] I have explained above why the Parental Notification Law does not violate equal protection: the two classes of minors are not similarly situated. Given the critical balance between a woman's right to decide to have an abortion, the State's legitimate and compelling interests in the health of the minor who is seeking an abortion, and the parents' fundamental rights to be informed of and involved in their minor daughter's decision making, I conclude that so long as there is an effective, reasonably simple way for a sufficiently mature minor to bypass the parental notification requirements under the statute, our precedent, reason, and policy compel upholding the Parental Notification Law as a legitimate exercise of the people's power to initiate law and of legislative power to enact law. In the balance, a mature minor's right to privacy, whatever its contours, is protected by the judicial bypass mechanism contained in the statute; an immature minor's right to privacy, if any, is not so protected nor should it be-because she is immature.
II THE PARENTAL NOTIFICATION LAW DOES NOT IN PRACTICE INHIBIT A MATURE MINOR'S RIGHT TO OBTAIN AN ABORTION,.
The Parental Notification Law does not require a minor to obtain parental consent for an abortion. Furthermore, it neither bars a minor from obtaining an abortion nor presents significant hurdles for a minor seeking *1159 an abortion. Instead, the Parental Notification Law requires that one of the minor's parents receive 48 hours' notice before the abortion occurs, And. this requirement is not absolute; the law includes a constitutionally necessary exception to protect the minor's life[18] as well as a judicial bypass mechanism.[19] This judicial bypass mechanism is available to minors who can demonstrate "that one or both of the minor's parents or the minor's guardian or. custodian was engaged in physical abuse, sexual abuse, or a pattern of emotional abuse against the minor, or that the consent of a. parent guardian, or custodian otherwise is not in the minor's best interest." [20] The bypass is also available to minors who-regardless of the reason-do not wish to have their parents notified and can demonstrate that they are "sufficiently mature and well enough informed to decide intelligently whether to have an abortion without notice to ... a parent, guardian, or custodian."[21]
Even in the absence of abuse, the bypass process presents an almost negligible hurdle to access to an abortion with the inclusion of the "mature and well-informed" language in AS 18.16.030(b)(4)(A). The superior court found that under this broad provision "[ilf an Alaskan minor invokes the sufficient-maturity prong in her bypass petition, her petition will invariably be granted." [22] While filing a petition and appearing in court may seem to be a challenging experience for a minor, it is not difficult for an appropriately mature and well-informed minor to obtain judicial bypass, not only because of the broad scope. of the language in AS 18.16.0830(b)(d)(A), but also because access and cost are not barriers in either theory or practice.
First, the statute itself ensures that access and cost are not barriers to judicial bypass. The statute explicitly provides that an attorney will be appointed if the minor does not retain one of her own [23] and that there is no cost to obtain the necessary forms, file these forms, or appear in court.[24] The statute also provides that the minor must be informed that she may request a telephonic hearing to avoid an in-person hearing and that the court may exeuse a minor from school to participate in her hearing.[25]
Second, access and cost are not barriers to judicial bypass in practice. The bypass petition instructions list a toll-free number through which the minor can speak to a magistrate judge, who may appoint counsel and help direct the tninor to the correct court. Minors may file their bypass petitions via email, fax, mail, or in person. An Alaska attorney who handled judicial bypass petitions testified in the superior court that she was able to prepare minors for these hearings by phone and that one of the minors she represented successfully appeared at, the hearing telephomcally She mdlcated that all of the petitions she worked on were success"ful; that she "receives notice from the court system within an hour or two of a petition's lodging"; that all of her conferences with the *1160 minors occurred within 24 hours of the initial contact; and that all of her bypass hearings were held within 48 hours of the filing of the petition.
Thus, the Parental Notification Law includes an easily navigable, broad bypass process, which ensures that the Notification Law does not stand in the way of a minor's access to abortion. However, even though all petitions under the Parental Notification Law have been granted so far, this law is necessary for the State to ensure that in those cases where a minor does not petition to bypass parental notification, the people society holds responsible for her well-being-her parents-will be informed of what is happening in her life.
III. EQUAL PROTECTION
A. Our Departure From Planned Parenthood II
In Planned Parenthood II, this court decided "that the State has an undeniably compelling interest in protecting the health of minors and in fostering family involvement in a minor's decisions regarding her pregnancy." [26] The court concluded, however, that the Parental Consent Act burdened a minor's fundamental right to privacy [27] and that even though the State's interests in "protecting minors from their own immaturity and aiding parents in fulfilling their parental responsibilities" were compelling,[28] the Parental Consent Act could not stand because it failed to use the least restrictive means available to advance the State's compelling interests.[29]
While this court held that the Parental Consent Act improperly balanced the minor's right to privacy and these compelling government interests, the court also endorsed "a statutory scheme which ensures that parents are notified so that they can be engaged in their daughters' important decisions in these matters." [30] More specifically, this court held that "(there exists a less burdensome and widely used means of actively involving parents in their minor children's abortion decisions: parental notification." [31] The court identified the option of parental notification as a constitutionally acceptable lesser restrictive means of achieving the State's compelling interests; the court claimed that "[ble-cause the State has failed to establish that the greater intrusiveness of a statutory scheme that requires parental consent, rather than parental notification, is necessary to achieve its compelling interests, the Parental Consent Act does not represent the least restrictive means of achieving the State's interests and therefore cannot be sustained." [32] That last holding was based on the idea that the legislature could have achieved the same goals through less restrictive means: namely, a parental notification law.[33] This was an explicit endorsement of parental notification. By striking down the Parental Notification Law, today's decision departs-without any compelling reason-from the court's decision and rationale in Planned Parenthood II.
Today's majority opinion recognizes this inconsistency and claims that Planned Parenthood II did not "mean that every conceivable notification law will satisfy the separate and independent constitutional equal protection standard." [34] The opinion goes on to proclaim that "the Notification Law stands or falls on its own specific terms and stated justifications." [35] And its reasoning suggests that the legislature could amend the Parental Notification Law or make further findings that might make a parental notification statute constitutional under Alaska law.
But the majority's equal protection analysis does not rely on or even mention the *1161 specific terms and shortcomings of this parental notification statute.[36] Instead, it focuses on the fact that the statute requires notification when minors choose to abort but not when they choose to carry to term. Most instructive is the following statement:
We must conclude that the State's asserted interests do not justify a distinction between pregnant minors seeking to terminate and those seeking to carry to term.... The Notification Law's discriminatory barrier to those minors seeking to exercise their fundamental privacy right to terminate a pregnancy violates Alaska's equal protection guarantee.[37]
But a law requiring parental notification of a minor's abortion necessarily differentiates between minors seeking an abortion and minors who intend to carry to term. This is because Alaska minors who intend to carry to term are able to consent to pregnancy related care without parental notification or consent.[38] The legislature could have required parental notification for any pregnancy-related treatment of a minor. But the parties agreed in the superior court that "no useful purpose is served by withdrawing medical emancipation and requiring parental consultation for carry-to-term decisions." And the superior court found that medical emancipation for carry-to-term decisions encouraged minors "to obtain prenatal care [that] advances important interests in maternal and fetal health." This is all the more
Furthermore, the majority of states whose laws we cited in Planned Parenthood II make a similar distinction.[39]
*1162 Instead of explaining what portion of AS 18.16.030 justifies departing from the court's unqualified approval of parental notification in Planned-Parenthood II, today's opinion suggests that there is something wrong with this notification statute and that some other notification statute might survive an equal protection challenge. But it is difficult to see how any parental notification law could survive unless there are significant changes to Alaska's medical emancipation laws, such that minors intending to carry to term are subject to parental notification as well. Neither party endorses such changes.
B. © The Two Groups Are Not Slmllarly Situated.
The Alaska Constitution provides equal protection only among those who are similarly situated.[40] If the groups being compared are similarly situated "we apply a sliding seale of scrutiny to the challenged practice." [41][We first determine the importance of the constitutional right .... We then examine the [SItate's interests .... Finally, we consider the means the [State uses to advance its interests." [42]
The majority concedes that there is a "factual difference between the two classes of pregnant minors." However, the majority concludes that "the State's asserted interests do not justify a distinction between pregnant minors seeking to terminate and those seeking to carry to term."
As explained in the Introduction, the Parental Notification Law does not violate Alaska's guarantee of equal protection because the 'two groups are not similarly situated. I agree with the reasoning set forth in the superior court's decision on this matter, with which the concurrence also agrees.
C. A Review Of Other States' Notification And Consent Laws
Today's opinion is also a significant departure from the majority approach throughout the United States regarding parental rights to notice of or consent to their daughter's abortion.[43] A majority of states have enacted parental notice [44] or parental consent [45] laws *1163 that are currently in effect.[46] The Supreme Court of the United States has held that a law requiring parental notification is not unconstitutional under federal law.[47] Several of these state laws have been challenged and declared constitutional under their respective state constitutions,[48] including some that have survived equal protection challenges.[49] Only one state upholding parental notification or consent in the face of an equal protection challenge has equal protection language so different from our own that it would impact the analysis in this dissent.[50]
Having previously stricken the Parental Consent Act and now holding the Parental Notification Law unconstitutional places Alaska out of the mainstream of accepted limits on the right to privacy and equal protection [51] and shows a marked disrespect to the people's and the legislature's expression of the State's interests in both the health and well-being of its minor citizens - and the mi-norg parents' rights to be informed and involved in their daughters' decision making.
IV. THE RIGHT TO PRIVACY
While I agree with that part of the concurrence's equal protection discussion concluding that the two classes of pregnant - minors are not similarly situated, I disagree with the concurrence's conclusion that the Parental Notification Law violates the Alaska Constitution's Privacy Ciguse. The plain language ' of the Privacy Clause does not address this question, nor is there any suggestion in the history of the constitutional amendment -ere-ating the right to privacy in Alaska that the amendment was intended to overturn, parents' rights to be informed that their minor daughters were intending to obtain abortions.[52] As explained above, in Planned Par *1164 enthood II this court determined - correctly - that the State's interests in "protecting minors from their own immaturity and aiding parents in fulfilling their parental responsibilities" are compelling.[53] It is only a misapplication of the "strict serutiny/narrow tailoring of means-to-end test" that justifies a conclusion that the Parental Notification Act violates the Privacy Clause, This defies reason and common sense.[54]
I disagree with the concurrence's statement that the Parental Notification Law "does not achieve its goals using the least restrictive means." [55] Whether a method is the least restrictive means of achieving the State's compelling interests is in the eye of the beholder. What one judge or policymaker considers to be the least restrictive means of achieving a given goal may not seem to be the least restrictive means to another judge or policymaker, Based on their individual experiences, how they weigh the given evidence, and their personal values, whether one policy is less restrictive than another typically comes down to a value judgment.
The Alaska Supreme Court's persistent use of an ever-narrowing means-to-end test in these parental consent and notification cases demonstrates that when the test passes the limits of reason and common sense, the test loses whatever legitimacy it (may have) once possessed. The quest to discover "lesser restrictive means" to achieve the State's compelling interests at some point becomes self-fulfilling-there can always be found some lesser alternative that might have been employed, and thus every legislative enactment touching upon abortion can be held unconstitutional-whether under the rubric of right to privacy or equal protection. The court's "lesser restrictive alternative" analysis today reminds me of Zeno's paradox of the race between the Tortoise and Achilles (purporting to prove that the faster runner can never win the race because, when one artificially divides the distance of the racecourse in half, then again in half, and again and again ad infinitum, the runner can never cross the finish line because there will always be some small incremental half-distance remaining).
In my view, onee it is understood that the Parental Notification Law contains an effective, reasonably simple judicial bypass mechanism that will permit sufficiently mature minors to bypass parental notification,[56] and provides for bypass if there is evidence of parental abuse,[57] then the court should respect the people's and the legislature's policy decisions and line drawing with respect to the remaining details of the Notification Law. For example, the concurrence finds it objectionable that the legislature drew a line at age 16 in the Parental Consent Act[58] but drew the line at age 18 in the Parental Notification Act.[59] I do not find this difference to be of constitutional magnitude. Though a minor aged 16 to 17 is brought within the Notification Act, if she is sufficiently mature, or if there is evidence of parental abuse, then she will be able to bypass parental notification. I find this entirely reasonable and do not think it is the court's constitutional responsibility or prerogative to second guess this legislative policy call.
*1165 Finally, assuming for the sake of argument that the Parental Notification Law as written does violate the Privacy Clause, I also cannot join in the concurrence's conclusion that the Notification Law cannot be modified to comply with the Alaska Constitution's privacy guarantee by severing certain provisions.
Even if the legislature does not explicitly include a severability clause in legislation, Alaska courts interpret legislation as though it includes a severability clause under AS 01.10.080.5 [60] We have consistently severed laws rather than invalidating them when construing this general severability clause [in AS 01.10.0301." [61]
This court determines severability using a two-part test. "A provision will not be deemed severable 'unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision to stand, in case others included in the act and held bad should fall[62] "The key question is whether the portion remaining, onee the offending portion of the statute is severed, is independent and complete in itself so that it may be presumed that the legislature would have enacted the valid parts without the invalid part." [63]
The concurrence identifies three major issues as being overbroad in addition to those that the superior court has already enjoined that are not on appeal. First, the concurrence states that the clear and convincing evidence standard of proof that the Parental Notification Law requires a minor to meet before she may bypass the Notification Law is one of the strictest in the country. Second, the concurrence suggests that the heavy burden the Notification Law places on physicians and families is overbroad compared to similar laws in other jurisdictions. The concurrence notes that a parent or guardian must show government identification and proof of their relationship to the minor before receiving notice. The concurrence also argues that the Parental Notification Law places physicians under a heavy burden, as they are required to both verify that the phone number they use to provide notice is that of the parent or guardian and to ask questions to verify the identity of the parent or guardian onee the physician reaches them. Finally, the concurrence suggests that the Parental Notification Law is too expansive in scope because it applies to minors over the age of sixteen, while Planned Parenthood II only considered a notification law applicable to minors aged sixteen and younger. -
I disagree with the concurrence's conclusions that this law "does not demonstrate a serious effort at narrow tailoring" and that these aspects of the Parental Notification Law are overbroad. As just one example, consider the clear and convincing evidence standard, which requires a minor to make certain showings by clear and convincing evidence before bypassing the Notification Law. Practically, this standard is no more strict than similar laws in other states, When a minor seeking a judicial bypass appears before the court alleging she is sufficiently mature to make her own decision, she in all probability will be the only witness present. Her testimony will be persuasive on the merits or it will not be. If it is persuasive to the court, it will be found to be clear and convincing; if it is found unpersuasive, the testimony would not meet the preponderance of the evidence standard.
Furthermore, the superior court has already enjoined certain portions of the Parental Notification Law while upholding others. The superior court enjoined the civil liability portion of the statute as well as the personal-notice-by-physician provision. There is no reason to think that the clear and convincing *1166 evidence standard, the provisions that place heavier burdens on physicians and families than similar provisions in other states, and the age provisions of the Notification Law cannot also be severed if they are constitutionally infirm, The provisions that the concurrence questions are no more fundamental to the Parental Notification Law than those enjoined by the superior court. It would be easy to remove the clear and convincing evi-denee standard, lessen the burdens on families and physicians, and change the age restrictions in the Parental Notification Law should the court find that these portions of the law are indeed overbroad. ‘
If these provisions are severed, the heart of this legislation remains-the requirement that parents of a minor seeking an abortion be notified of their daughter's choice. The other issues the concurrence raises are merely side issues.
The Alaska Legislature and the voters of this state have exerted substantial efforts to pass some form of parental involvement law.[64] I have little difficulty concluding that they would prefer this court save the Parental Notification Law by severing certain non-integral provisions if at all possible, and I believe we could do so.
v. CONCLUSION
For all of these reasons, I dissent from the majority opinion's equal protection analysis and I disagree with the concurring opinion's right to privacy analysis. ®

. State v. Planned Parenthood of Alaska, 171 P.3d 577 (Alaska 2007) (Planned Parenthood II).

. Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 871-72, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (internal citations omitted).

. AS 18.16.010-.040; Alaska Laws Initiative Meas, 2 (Bal. Meas. 2), 26th Leg., 2d Sess. (2010). See also Planned Parenthood of Alaska v. Campbell, 232 P.3d 725, 727 (Alaska 2010) (discussing the initiative's procedural history).

. Seth D. v. State, Dep't of Health &Soc. Servs., Office of Children's Servs., 175 P.3d 1222, 1227-28 (Alaska 2008) (citations omitted). I acknowledge that this quote is frequently found in the context .of court decisions concerning the termination of parental rights. But it seems reasonable to conclude that parents' fundamental rights to provide care for their. children include the right to know that their minor daughter is planning. to obtain an abortion and the right to counsel their daughter concerning the "philosophic and social arguments of great weight" recognized by the Supreme Court in Planned Parenthood v. Casey, quoted above,

. The majority argues that the issue before this court has nothing to do with parents' constitutional rights to parent their children and that this case instead involves only the questions of whether the Notification Law violates minors' equal protection or privacy rights, In my view, this case is more about the rights of parents to be informed about and involved in their daughter's decision to have an abortion than anything else. Nevertheless, the legal analysis in this dissent responds to the court's majority and concurring opinions that rest upon equal protection and privacy grounds and conclude that the Parental Notification Law does not violate either equal protection or the right to privacy.

. Ch. 14, §§ 1-10, SLA 1997.

. Planned Parenthood II, 171 P.3d 577, 580 (Alaska 2007).

. Id. at 581 n. 21, 585. In my view, the dissenting opinion in Planned Parenthood II, authored by Justice Carpeneti and joined in by Justice Matthews, is a far more compelling resolution of the privacy argument raised in that case, See id. at 585-98 (Carpeneti, J., dissenting). I can only echo Justice Carpeneti's remarks in Planned Parenthood II, which I find equally applicable to this appeal: "Because this court's rejection of the legislature's thoughtful balance is inconsistent with our own case law and unnecessarily dismissive of the legislature's role in expressing the will of the people, I respectfully dissent." Id. at 585.

. Id. at 579 (emphasis added) (majority opinion).

. Id. (quoting Ohio v. Akron Ctr. for Reproductive Health, 497 U.S. 502, 511, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990)) (emphasis added).

. Id. at 585 (second alteration in original) (emphasis added) (citations omitted).

. AS 18.16.010-.040; Alaska Laws Inifiative Meas. 2 (Bal. Meas. 2), 26th Leg., 2d Sess. (2010). See also Planned Parenthood of Alaska v. Campbell, 232 P.3d 725, 727 (Alaska 2010) (discussing the initiative's procedural history).

. The majority today does not agree that whether two groups are similarly situated is a question of fact. The majority acknowledges that this court has held in a unanimous decision as recently as two years ago that "[wlhether two entities are similarly situated is generally a question of fact." State v. Schmidt, 323 P.3d 647, 655 (Alaska 2014). But today, being confronted with this inconvenient holding, the majority now claims that this statement "may have created some ambiguity about the standard of review for 'similarly situated' when examining an equal protection challenge under the 'shorthand analysis'-is it a question of fact or is it a mixed question of fact and law?" Opinion at 1137. The majority rationalizes that "rather than resolving the 'similarly situated' issue purely as a factual matter" in Schmidt, "we considered the superior court's factual findings ... and held as a matter of law that same-sex couples who would marry if allowed to do so were ... similarly situated to married couples." Opinion at 1137 n. $1. But the majority also claims that "[wle do not need to address that question [raised by Schmidt regarding the 'similarly situated' standard of review] here" because we are not using a shorthand analysis. Opinion at 1137.
The standard of review can be critical to the outcome of a case. If the issue presented concerns a factual finding by the trial court, this court will review that finding under a very deferential clear error standard: only if the trial court's finding is clearly erroneous will we reverse that finding. Planned Parenthood II, 171 P.3d at 581. But if the issue presented involves a question of law, this court will be free to substitute its own judgment for that of the trial court. This court reviews such questions de novo, adopting the rule of law "in light of precedent, reason, and policy." Id. It is ironic, at the least, that the majority today must disavow precedent even with respect to the standard of review in order to also disavow its approval of a parental notification law repeatedly championed in Planned Parenthood II. The law on the standard of review had been settled and is straightforward: whether the two groups are similarly situated has been traditionally understood to be a question of fact. Now the majority unjustifiably uses its "independent judgment" to "clarify" the law to avoid applying the clearly erroneous standard of review to the superior court's factual finding that minors seeking abortions are not similarly situated to minors who want to carry their pregnancies to term.
It is ironic, at the least, that the majority today must disavow precedent even with respect to the standard of review in order to also disavow its approval of a parental notification law repeatedly championed in Planned Parenthood II. The law on the standard of review had been settled and is straightforward: whether the two groups are similarly situated has been traditionally understood to be a question of fact. Now the majority unjustifiably uses its "independent judgment" to "clarify" the law to avoid applying the clearly erroneous standard of review to the superior court's factual finding that minors seeking abortions are not similarly situated to minors who want to carry their pregnancies to term.

. Schmidt, 323 P.3d at 655 ("'Whether two entities are similarly situated is generally a ques- ~ tion of fact,' reviewed for clear error." (citing Alaska Inter-Tribal Council v. State, 110 P.3d 947, 967 (Alaska 2005))).

. Planned Parenthood II, 171 P.3d at 583 (quoting Wisconsin v. Yoder, 406 U.S. 205, 233, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972)).

. Id. at 582.

. Id. at 581.

. AS 18.16.010(g) (providing an affirmative defense for failing to notify a minor's parent prior to the abortion when an "immediate threat of serious risk to the life or physical health of the pregnant minor from the continuation of the pregnancy createls] a medical emergency necessitating the immediate performance or inducement of an abortion"); Roe v. Wade, 410 U.S. 113, 163-64, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ("If the State is interested in protecting fetal life after viability, it may go so far as to proscribe abortion during that period, except when it is necessary to preserve the life or health of the mother." (emphasis added)).

. See Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 899, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) ("Our cases establish, and we reaffirm today, that a State may require a minor seeking an abortion to obtain the consent of a parent or guardian, provided that there is an adequate judicial bypass procedure." {(emphasis added)).

. AS 18.16.030(b)(4)(B) (emphasis added).

, AS 18.16,030(b)(4)(a).

. During the 14 months that this Parental Notification Law was in effect, 9 minors filed bypass petitions. Of those petitions, 8 were granted and 1 was withdrawn. The superior court also noted that studies from Minnesota and Massachusetts indicated their rates of denied petitions to be 0.25% and 0.013%, respectively.

. AS 18.16.030(d).

, AS 18.16.030(), (m).

. AS 18.16,030(2).

. Planned Parenthood II, 171 P.3d 577, 579 (Alaska 2007).

. Id. at 581-82.

. Id. at 582.

. Id. at 583-85.

. Id. at 579.

. Id.

. Id.

. Id.

. Opinion at 1134.

. Opinion at 1135.

. Had there been something specific to this notification law that rendered it unconstitutional the majority's analysis would be expected to look similar to the concurrence's analysis of the privacy issue: That it does not is telling. Instead, the majority engages in an unconvincing equal protection analysis, ultimately grounded on a false similarity between two distinct classes of pregnant minors.

. Opinion at 1143.

. AS 25.20.025(a)(4).

. Planned Parenthood II, 171 P.3d 577, 583 (Alaska 2007) ("Although the precise details of [the parental notification statutes cited in note 40 of Planned Parenthood II] vary, they all prohibit minors from terminating a pregnancy until their parents have been notified and afforded an appropriate period of time to actively involve themselves in their minor children's décision-making processes." (emphasis added)). The following list sets forth the status of this distinction in the states we cited in Planned Parenthood II, note 40; Coro. Rev. Star. §§ 12-37.5-101 to -108 (requiring parental notification), § 13-22-103.5 (providing medical emancipation for care related to an intended live birth); Der, Copg Axx. tit. 13, § 710 (providing medical emancipation for, inter alia, pregnancy-related care other than abortion to minors age 12 and older), tit. 24, §§ 1780-1789B (requiring parental notification); Fra. Stat. § 390.01114 (requiring parental notification}, § 743.065(a) (providing medical emancipation for a minor for pregnancy-related care); Ga. Copr Ann,. §§ 15-11-680 to -688 (requiring parental notification}, § 31-9-2(a)(5) (providing every woman with the ability to consent to medical treatment when related to her pregnancy), § 31-9-5 (specifically excluding abortion and sterilization from § 31-9-2); 410 I1. Comp. Stat. 210/1 (granting a pregnant minor the same capacity to act as a person of legal age with respect to medical consent), 750 Iut. Comp. Stat. 70 (requiring parental notification); Mp. Cope Ann, Hearte.Gen. § 20-102(c)(4) (permitting a minor to consent to pregnancy-related treatment), § 20-103 (requiring parental notification); Mix. Star. § 144.343(1) (permiiting a minor to consent to pregnancy-related ° treatment), § 144.343(2) (requiring parental notice of abortion); Mont Copz Axim. § 41-1-402(2)(c) (emancipation provision) §§ 50-20-501 to -511 (requiring parental consent), Montana enacted a notice law in 2011 and a consent law in 2013. The 2013 consent statute replaced the 2011 notification statute, but the 2013 statute was enjoined, so the 2011 statute remains in effect. Planned Parenthood of Mont. v. State, 378 Mont. 151, 342 P.3d 684, 687 n. 2 (2015). Kansas allows a minor to consent to pregnancy-related care when no parent or guardian is available. Kan. Stat. Ani. § 38-123 (allowing a pregnant minor to consent to pregnancy-related care "where no parent or guardian is available"), §§ 65-6704 to -6705 (requiring parental consent for minor's abortion). Iowa, Nevada, South Dakota, and West Virginia do not have medical emancipation laws allowing minors to consent to pregnancy-related medical care, but they do have parental notification laws. Towa Cope § 1351.3; Nev. Rev. Stat. 442.255 (Nevada's parental notification statute is permanent ly enjoined. Glick v. McKay, 937 F.2d 434 (9th Cir. 1991) (preliminary injunction upheld); No. CV-N-85-331-ECR (D. Nev. Oct. 10, 1991) (permanent injunction issued); S.D. Contre» Laws § 34-23A-7; W. Va. Cope §§ 16-2F-1 to -9. New Jersey has a medical emancipation law, but the state's parental notification law was declared unconstitutional. NJ. Srar Ammu, § 9174-1 *1162 (emancipation provision), §§ 9:17A-1.1 to 1.12 (requiring parental notification) declared unconstitutional under state constitution in Planned Parenthood of Cent, N.J. v. Farmer, 165 N.J. 609, 762 A.2d 620, 622 (2000). Nebraska now requires parental consent. Nzs. Rav, Srar. §§ 71-6901 to -6908. .

. Shepherd v. State, Dep't of Fish & Game, 897 P.2d 33, 44 (Alaska 1995) ("The Equal Rights and Opportunities Clause of the Alaska Constitution requires equal treatment only for those who are similarly situated." (emphasis added)).

, Alaska Inter-Tribal Council v. State, 110 P.3d 947, 966-67 (Alaska 2005).

. Id at 967 (footnotes omitted),

. Contra. Opinion at 1143 ("Our, decxsmn today is not novel."),

. Twelve other‘states have active parental notification laws. Coro. Rev. Stat. §§ 12-37.5-101 to - 108; Det.. Coor® Aww. tit. 24, §§ 1780-1789B; Fra. Strat. § 390.01114; Ga. Copp Amn, §§ 15-11-680 to -688; 750 Inn, Coup. Stam. 70; Iowa Cope §§ 135L.1 to L.8; Mp. Cons Awx.. § 20-103; Minx. Stat, § 144.343; NH. Rev. Srar. Anw §§ 132:32-36; S.D, Coptrigp Laws § 34-23A-7; W. Va. Coop §§ 16-2F-1 to -9; Planned Parenthood of Mont. v. State, 378 Mont. 151, 342 P.3d 684, 687 n. 2 (2015) (indicating parental consent law is currently enjoined, but parental notice law is in effect).

. Twenty-six states have active parental consent statutes. Ara Cope §§ 26-21-1 to -8; Ariz. Rev, Srat. Ann, § 36-2152; Ark. Copp Ann. § 20-16-801 to -810; Inaso Ann. § 18-609 (as amended by 2015 Inao Sess. Laws 141); Inv, § 16-34-2-4; Kan. Stat, Ann. § 65-6705; Ky, Rev. Stan, Ann § 311.732; La Rev. Smn Auk. § 40:1299.35.5; Mass, Gen. Laws, Ch. 112, § 123; Mica. Comp, Laws §§ 722.901-.908; Miss, Copr Axn §§ 41-41-51 to -63; Mo. Rev. Strat. § 188.028; Nes. Rev. Star. §§ 71-6901 to -6911; N.C. Gen, Srar §§ 90-21.6 to AO; ND,. Cent Copr § 14-02.1 to -03.1; Omo Rev. Copr Ann. § 2919.121 unconstitutional provisions severed in Cincinnati Women's Servs., Inc. v. Taft, 468 F.3d 361, 364 (6th Cir. 2006); Okla. Stat. tit. 63, §§ 1-740.1 to .6; 18 Pa. Cons. Stat. Ann, § 3206; R.I. Gen, Laws § 23-4.7-6; S.C. Code Ann. § 44-41-31; Tenn. Cope Any. 3710-301 to -308; Tex. Occ. Code Ann § 164.052(a)(19); Utah Code Ann. § 76-7304.5; Va. Code Ann. § 16.1-241(W) (creating a process whereby a minor may petition a court for the ability to consent to an abortion), § 54.1-2969(J) (excluding abortion from a list of procedures to which a minor may independently consent unless the minor complies with § 16.1-241); Wis, Stat. § 48.375; Wyo. Strat. Ana. § 35-6-118, But see Cal. HeattH & Sarety Copp § 123450 (requiring parental consent) invalidated under state constitution in Am. Acad. of Pediatrics v. Lungren, *1163 16 Cal.4th 307, 66 Cal.Rptr.2d 210, 940 P.2d 797, 800 (1997).

. The majority argues that I cite these jurisdictions without "[rlelevaht inquiries about each jurisdiction's laws." Opinion at 1144. But in Planned Parenthood II the dissent cited these jurisdictions for similar propositions, and I believe it is fair to cite them for similar purposes here. Planned Parenthood II, 171 P.3d 577, 596 (Alaska 2007) (Carpeneti, J., dissenting).

. H.L. v. Matheson, 450 U.S. 398, 409, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (citing Bellotti v. Baird, 443 U.S. 622, 640, 649, 99 S.Ct. 3035 61 L.Ed.2d 797 (1979)).

. Ex parte Anonymous, 531 So.2d 901, 905 (Ala. 1988); Planned Parenthood Ariz., Inc. v. Am. Ass'n of Pro-Life Obstetricians &Gynecologists, 227 Ariz. 262, 257 P.3d 181, 186 (Ariz.App. 2011); Hope Clinic for Women, Ltd. v. Flores, 372 Ill.Dec. 255, 991 N.E.2d 745, 765-69 (2013); In re Doe, 407 So.2d 1190 (La. 1981) (per curiam); Planned Parenthood League of Mass., Inc. v. Att'y Gen., 424 Mass. 586, 677 N.E.2d 101, 106 n. 10 (1997); Pro-Choice Miss. v. Fordice, 716 So.2d 645, 656-60 (Miss. 1998); cf. Planned Parenthood of Kan. v. Nixon, 220 S.W.3d 732 (Mo. 2007) (upholding related statute providing civil penalties against providers of abortions who assist minors without parental consent or judicial bypass of the consent requirement). Arkansas's statute also seems likely to survive constitutional challenges because that state applies the federal constitutional analysis. See Ark. Const. amend. 68, § 2 ("The policy of Arkansas is to protect the life of every unborn child from conception until birth, to the extent permitted by the Federal Constitution,").

. Planned Parenthood Ariz., Inc., 257 P.3d at 186; Hope Clinic for Women, Ltd., 372 255, 991 N.E.2d at 765-69; Planned Parenthood League of Mass., Inc., 677 N.E.2d at 106 n. 10 (generally affirming parental consent statute in face of equal protection challenge); Pro-Choice Miss., 716 So.2d at 656-60.

. Compare Alaska Const. Art, 1, § 1 ('This constitution is dedicated to the principle[] ... that all persons are equal and entitled to equal rights, opportunities, and <protection under the law. .. .'}, with Ariz. Const, art. 2, § 13 (”No law shall be enacted granting to any citizen ... privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."); In Const art. 1, § 2 ("No person shall be ... denied the.equal protection of the laws."); MASS Const. art. 1 ("All people are born free and equal.... Equality under the law shall not be denied or abndged because of sex, race, color, creed or national origin."). Mississippi's constitution does not contain specific equal protection language. See generally Miss, Const.; Pro-Choice Mississippi v. Fordice, 716 So.2d 645 (Miss. 1998).

. See Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 871-72, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

. See Gray v. State, 525 P.2d 524, 528 (Alaska 1974) ("In 1972 Alaska amended its constitution expressly providing that, 'The right of the people to privacy is recognized and shall not be infringed.' There is no available recorded history of this amendment.... But the right of privacy is not absolute. Where a compelling state interest is shown, the right may be held to be subordinate *1164 to express constitutional powers such as the authorization of the legislature to promote and protect public health and provide for the general welfare." (emphasis added) (internal citations omitted)).

. Planned Parenthood II, 171 P.3d 577, 582 (Alaska 2007).

. Cf. Planned Parenthood of Southeastern Pa., 505 U.S. at 871, 112 S.Ct. 2791 ("Roe v. Wade speaks with clarity in establishing not only the woman's liberty but also the State's "important and legitimate interest in potential life.' That portion of the decision in Roe has been given too little acknowledgment and implementation by the Court in its subsequent cases. Those cases decided that any regulation touching upon the abortion decision must survive strict scrutiny, to be sustained only if drawn in narrow terms to further a compelling state interest. Not all of the cases decided under that formulation can be reconciled with the holding in Roe itself that the State has legitimate interests in the health of the woman and in protecting the potential life within her." (emphasis added) (internal citations omitted)).

. Concurring Opinion at 1146.

. AS 18.16.030(b)(4)(A).

. AS 18.16.030(b)(4)(B).

. See Planned Parenthood II, 171 P.3d at 583.

. AS 18.16.010(a)(3).

. AS 01.10.030 ("Any law heretofore or hereafter enacted by the Alaska legislature which lacks a severability clause shall be construed as though it contained the clause in the following language: 'If any provision of this Act, or the application thereof to any person or circumstance is held invalid, the remainder of this Act and the application to other persons or circumstances shall not be affected thereby.' ").

. Alaskans for a Common Language, Inc. v. Kritz, 170 P.3d 183, 214 (Alaska 2007).

. Lynden Transp., Inc. v. State, 532 P.2d 700, 713 (Alaska 1975) (quoting Dorchy v. Kansas, 264 U.S. 286, 290, 44 S.Ct. 323, 68 L.Ed. 686 (1924)).

. Sonneman v. Hickel, 836 P.2d 936, 941 (Alaska 1992).

. See ch. 14, SLA 1997; ch. 178, SLA 2004; Ballot Measure No. 2 (Alaska 2010), http://www. elections. alaska.gov/doc/bmp/2010/2010.prim... bmp.pdf.